MUSKEGON PROSECUTING ATTORNEY, *ex rel.*
SCHAUB, *v.* KLEVERING.

DECISION OF THE COURT.

1. QUO WARRANTO—COUNTY BOARD OF SUPERVISORS—JURISDICTION—EQUALLY DIVIDED COURT.

Jurisdiction of quo warranto proceeding to determine authority of defendants to represent city on county board of supervisors is retained until the end of the 1967 legislative session by T. M. KAVANAGH, C. J., and SOURIS, SMITH, and ADAMS, JJ., who vote for reversal, and retained pending determination by Supreme Court of the United States as to whether 1-man 1-vote principle applies or does not apply to organization of county government within a State, per BLACK, J., who together with DETHMERS, KELLY, and O'HARA, JJ., vote for affirmance, effecting an equally divided court.

SEPARATE OPINION FOR REVERSAL.

T. M. KAVANAGH, C. J., and SOURIS, SMITH, and ADAMS, JJ.

2. QUO WARRANTO—BOARD OF SUPERVISORS—CITY REPRESENTATION—JURISDICTION.

*Jurisdiction to determine authority of defendants to represent city on county board of supervisors is retained upon reversal of judgment dismissing quo warranto information.*

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5]  44 Am Jur, Quo Warranto § 22 *et seq.*
  5 Am Jur 2d, Appeal and Error §§ 901, 902.
[3]  18 Am Jur, Elections § 17.
  Inequalities in population of election districts or voting units as rendering apportionment unconstitutional—Federal cases.  12 L ed 2d 1282.
[4]  20 Am Jur 2d, Courts § 195.
  5 Am Jur 2d, Appeal and Error § 746.

SEPARATE OPINION FOR AFFIRMANCE.
BLACK, J.

3. QUO WARRANTO—BOARD OF SUPERVISORS—JURISDICTION.

*Jurisdiction of quo warranto proceeding to determine authority of defendants to represent city on county board of supervisors is retained pending determination that 1-man 1-vote principle applies or does not apply to the organization of county government in the State by Supreme Court of the United States; affirmance being presently voted, thereby effecting an affirmance by an equally divided court.*

4. COURTS—PRECEDENTS—EQUALLY DIVIDED COURT—CONSTITUTIONAL LAW.

*Sections of Constitution which were held constitutional by an equally divided court constitute a precedent in support of the constitutionality of the sections (Const 1963, art 7, §§ 7, 18).*

SEPARATE OPINION FOR AFFIRMANCE.
DETHMERS, KELLY, and O'HARA, JJ.

5. QUO WARRANTO—BOARD OF SUPERVISORS—EQUAL PROTECTION.

*Judgment dismissing quo warranto information to determine authority of defendants to represent city on county board of supervisors is not disturbed since construction of equality clause has not been construed thus far to strike down constitutional provisions of a State Constitution relative to selection of members of the board.*

Appeal from Muskegon; Beers (Henry L.), J. Submitted November 3, 1965. (Calendar No. 12, Docket No. 50,524.)   Decided April 5 and 6, 1966.

Quo warranto by Harry J. Knudsen, Muskegon County Prosecuting Attorney, on the relation of Eugene Schaub, against Henry J. Klevering, Alfred A. Meyers, Melvin Schultz, Donald F. Seyferth, Stephen Yonker, and Victor Yurick, challenging their right to represent the city of Muskegon on the county·board of supervisors, and asking the court to determine which two among the six are lawfully exercising said office.   Information dismissed.   Plain-

tiffs appeal. Affirmed by an equally divided court but with jurisdiction retained by the Supreme Court.

*Edward C. Wilson,* for plaintiffs.

*Poppen, Street & Sorensen (Harold M. Street,* of counsel), for defendants.

Souris, J. (*for reversal*). Decision in this case is controlled by our decision made this date in *Brouwer v. Kent County Clerk,* 377 Mich 616. Judgment below should be reversed but jurisdiction hereby is retained in this Court, to the same end as in *Brouwer; supra,* until the further order of this Court.

T. M. KAVANAGH, C. J., and SMITH and ADAMS, JJ., concurred with SOURIS, J.

BLACK, J. (*for retention of jurisdiction only*). To employ an apt expression of Justice ADAMS, our immediate question is whether this Court of a State is going "to attempt to outrun the Supreme Court of the United States."[1] To make such attempt we must become judicial prophesiers, that is, predictors of Federal law not yet conceived which, if born, will conflict with one of Michigan's oldest constitutional provisions (Const 1850, art 10, § 6; Const 1908, art 8, § 7; Const 1963, art 7, § 7). Now if this Supreme Court did have the final word for the present case, which of course it does not, I would join those who say that the "one-man one-vote" principle of the *Reynolds* through *Lucas Cases* (377 US 533–765 [84 S Ct 1362–1489, 12 L ed 2d 506–652]) applies to and controls the organization of county government in Michigan. Having reread Judge Searl's opinion of the companion case (considered *post*), I lean indeed

---

[1] Quoted fully, *infra.*

to belief that the United States Supreme Court will—in the ultimate—apply Fourteenth Amendment equality per the cited cases to the elective organization of local government. That belief is based principally on this terse precept:

"For the protection of the Federal Constitution applies, whatever the form in which the legislative power of the State is exerted; that is, whether it be by a constitution, an act of the legislature, or an act of any subordinate instrumentality of the State exercising delegated legislative authority, like an ordinance of a municipality or an order of a commission (citing cases)." *Standard Computing Scale Co.* v. *Farrell,* 249 US 571, 577 (39 S Ct 380, 63 L ed 780).[2]

But prediction of what the Supreme Court of the United States will do, in the yet unexplored brambles Mr. Justice Frankfurter—presciently 2 decades ago—referred to as "this political thicket" (*Colegrove* v. *Green,* 328 US 549, 556 [66 S Ct 1198, 90 L ed 1432]), has become increasingly perilous business. In today's specific circumstances, it is better judgment on the part of an inferior court to refrain from determination of an unprecedented Federal question pending formal declaration of controlling law by Federal authority. We did so, wisely if with back and forth difficulty, when the paragraph 7 apportionment proceeding was before us in 1964 (*In re Apportionment of State Legislature—1964,* 372 Mich 418; 373 Mich 247). A court thus situated is advised well to postpone decision and grant of relief, if any, until relevant light cast from higher authority directs dependable judgment. In other words, that court should let one or the other of its 2 superiors lead the way rather than skirmish ahead,

---

[2] To the same point see *Bantam Books, Inc.,* v. *Sullivan,* 372 US 58, 68 (83 S Ct 631, 9 L ed 2d 584).

leaving known constitutional law in effect for the present.[3]

Here we have, for consideration and decision, 2 diametrically opposed decisions by veteran circuit judges. In this case of Knudsen, Judge Beers has ruled impressively that "no reason whatever for making any change in the existing makeup of the board of supervisors of this [Muskegon] county" was shown. In the companion case (*Brouwer* v. *Kent County Clerk*, 377 Mich 616) Judge Searl has filed an able opinion to which the court in presently cited *Bianchi* paid due homage. The conclusion reached by Judge Searl was that "despite the enactment of the State's 1963 Constitution, 'the Fourteenth Amendment voids the entire Michigan plan.'" (Quotation from *Bianchi*, p 1002.) Where does this leave us, hopelessly divided as we seem to be? Should the Court proceed now (presumably by equally divided vote) to affirm both decisions, the contradictory legal situation in the bordering counties of Muskegon and Kent would approach the unbelievable. More, such judicial action would reflect odiously upon this Court's heralded competence and result in more litigation, doubtless in the Federal system directly, designed to settle the unsettled

---

[3] With the handing down of *Linkletter* v. *Walker*, 381 US 618 (85 S Ct 1731, 14 L ed 2d 601) and *Tehan* v. *United States, ex rel. Shott*, 382 US 406 (86 S Ct 459, 15 L ed 2d 453), one grows more cautious in estimating the Federal portents and in depending upon such estimates. For instance, when called upon to vote for or against the retroactive feature of our July 8, 1964 amendments of GCR 1963, 785 [see 373 Mich xv.—REPORTER.], I with most others had read *Gideon* v. *Wainwright*, 372 US 335 (83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733) as dictating retroactive effect of that and like decisions. See the unheeded concluding paragraphs of Mr. Justice Harlan's dissent at 352. My vote for such retroactive feature was cast accordingly. Then came Mr. Justice Harlan's "retroactive or prospective" challenge in the *Pickelsimer Cases (Pickelsimer* v. *Wainwright*, 375 US 2 [84 S Ct 80, 81, 11 L ed 2d 41, 42]) and, finally, *Linkletter* and *Tehan*. Now I mean to go slow and temporize more, in *all* instances where ours is not the last word.

status of 81 other boards of supervisors elected and to be elected in the peninsular State.

Justice O'HARA's opinion of the mentioned companion case was delivered to the rest of us March 23, 1966. It is most persuasive, not that we should reverse or affirm either case at this time, but that maintenance of the *status quo* is in order pending authoritative guidance. His opinion and that of Justice SOURIS considered, I suggest respectfully that there is a safe middle ground here. Seated as we are as a subordinate court confronted by an undecided Federal question of nationally controlling eminence, I would pause upon that ground until a specifically corresponding issue comes to reliable disposition in the Federal system proper. The exact question is already before a 3-judge court with jurisdiction retained (*Bianchi* v. *Griffing* [DC ED NY], 238 F Supp 997; appeal dismissed 382 US 15 [86 S Ct 52, 15 L ed 2d 11]), and it is evident that such question will come to final determination by the Supreme Court, either in the course of the cited case or some other similarly pending case, long before this case and its companion (*Brouwer* v. *Kent County Clerk*) may be reviewed and decided by that Court.[4]

For once there is no need of haste. What is and has been in Michigan for a century and a half will harm Michigan not at all should we retain jurisdiction and mark time pending such Federal disposition. That must be so considering our own lethargy thus far. This case was decided by Judge Beers September 5, 1963. It was submitted to us for decision on May 6, 1964, and resubmitted with its said companion on November 3, 1965. Yet no opinion

---

4 Another case, stimulated by the *Reynolds* through *Lucas* decisions and reaching into the political organization of Michigan school districts, is now before a 3-judge court. *Sailors* v. *Board of Education of the County of Kent* (DC WD Mich SD, 1966), 254 F Supp 17, probable jurisdiction noted by Supreme Court of the United States, 385 US 966.(87 S Ct 499, 17 L ed 2d 431).

of either case was prepared and delivered to all of the other Justices until February 19, 1966. In short, even if one were to agree tentatively with Justice Souris upon the merits of the controlling question, the words of Justice Adams, written just 2 years ago (*In re Apportionment of Legislature—1964*, 372 Mich 418 at 473), are pertinently appropriate:

"It [Justice Souris' interpretation] may well reflect the decision the United States Supreme Court will hand down any day now. When that day comes I will be pleased to join with him. Until it does, I do not conceive it to be the proper duty or function of this Court to attempt to outrun the Supreme Court of the United States."

To the above is added firm declaration that no timetables or deadlines, such as characterized the legislative apportionment proceedings of 1964 and 1965 (by force of article 4 of the Constitution of 1963) confront us presently; also that time is not of the pressing essence. If there is to be a transition from historic representation by township, to representation on a "population basis," such transition can and should be effected with gradual and painstaking circumspection, preferably by a thoughtfully drafted and duly adopted constitutional amendment, rather than by a headlong plunge into premature and possibly erroneous judicial decision. And let it be noted with final emphasis that there is here no prodding history of legislative failure to comply with a constitutional mandate such as gave putative birth to decisions like *Baker* v. *Carr*, 369 US 186 (82 S Ct 691, 7 L ed 2d 663) and *Scholle* v. *Secretary of State*, 360 Mich 1.

I would defer decision for at least 18 months, hopeful that the interval will bring to us (a) an authoritative determination that the principles announced in the *Reynolds* through *Lucas Cases* do, or do not, extend to the organization of local gov-

ernment under provisions such as are found in our Constitution and are common to many of the States, or (b), a duly submitted and voter-approved amendment of the pertinent parts of article 7 of the Constitution of 1963. I would retain jurisdiction in the meantime, and therefore vote against reversal or affirmance at this time. All this applies, of course, to the said companion case, *Brouwer* v. *Kent County Clerk, supra.*

SUPPLEMENTAL MEMORANDUM OF BLACK, J. (April 6, 1966) (*for affirmance*). In view of failure of the Court in this and the companion case to fashion an effective precedent governing the political organization of the respective boards of supervisors of Michigan, and to avoid disruption of the continuity of county government in Muskegon and Kent counties pending an authoritative Federal determination of the constitutional question, I cast my vote in this case to affirm the judgment of the circuit court for the county of Muskegon. Correlatively, my vote, in the companion case (*Brouwer* v. *Kent County Clerk*) is cast to reverse the decision of the circuit court for the county of Kent.

The result, thus effected with respect to a constitutional question by an equally divided Court, is a precedent upholding, as against present attack, the constitutionality of the pertinent sections of article 7 of the Constitution of 1963. *People* v. *McMurchy,* 249 Mich 147, 185.

O'HARA, J. (*for affirmance*). For the reasons set forth in *Brouwer* v. *Kent County Clerk,* 377 Mich 616. I would affirm the trial court in the dismissal of the information in the nature of quo warranto and allow no costs.

DETHMERS and KELLY, JJ., concurred with O'HARA, J.