ADVISORY OPINION *re* CONSTITUTIONALITY OF
PA 1966, NO. 261.

DISSENTING OPINION.

T. M. KAVANAGH and SOURIS, JJ.

1. COUNTIES—BOARD OF SUPERVISORS—APPORTIONMENT—CONSTITU-
TIONAL LAW—STATUTES.

*Statute which provides for the apportionment of county boards of*
*supervisors on the basis of supervisorial districts to be estab-*
*lished as equal in population as possible but which makes no*
*provision for the automatic allocation of one supervisor to*
*each organized township as required by a provision of the*
*State Constitution held, valid, since the provision of the State*
*Constitution so requiring is invalid when tested by the require-*
*ments of the equality clauses of the 14th Amendment to the*
*Constitution of the United States and the State Constitution,*
*because it would require every township to be represented on*
*its board of supervisors by one member and only one regardless*
*of the population of the township (US Const, Am 14; Mich*
*Const 1963, art 1, §§ 1, 2; art 7, § 7; PA 1966, No 261).*

OPINION OF THE COURT.
DETHMERS, C. J., and KELLY, BLACK, O'HARA, and
BRENNAN, JJ.

2. COUNTIES—BOARD OF SUPERVISORS—APPORTIONMENT—CONSTITU-
TIONAL LAW—STATUTES.

Statute which provides for the apportionment of county boards
of supervisors on basis of one-man one-vote principle, despite

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 25 Am Jur 2d, Elections § 16 *et seq.*
Inequalities in population of election districts or voting units
as rendering apportionment unconstitutional—Federal cases.
12 L ed 2d 1282.
[3, 4] 16 Am Jur 2d, Constitutional Law § 111.

constitutional provision requiring automatic allocation of one
supervisor to each organized township *held*, invalid, as clearly
inconsistent with an unambiguous provision of the Constitution
(Const 1963, art 7, § 7; PA 1966, No 261).

SEPARATE OPINION.

BLACK, J.

See headnote 2.

3. COURTS—ADVISORY OPINION—PRECEDENTS.

*An advisory opinion of the Supreme Court as to the constitution-
ality of a statute, made at the request of the governor prior
to its becoming effective, is not a judicial determination, or a
precedent of any kind or enforceable against anyone, including
the Court itself, and does not have* stare decisis *effect (Const
1963, art 3, § 8; PA 1965, No 261).*

DISSENTING OPINION.

ADAMS, J.

4. COUNTIES—BOARD OF SUPERVISORS—APPORTIONMENT—CONSTITU-
TIONAL LAW—STATUTES.

*The State Supreme Court should defer its advisory opinion
in the matter of the constitutionality of statute relative to ap-
portionment of districts for members of the board of supervi-
sors, not in accord with provision of Constitution requiring at
least 1 supervisor from each organized township, until deter-
mination of pending cases in Supreme Court of the United
States relative to apportionment of local governmental bodies
or the end of its present term, whichever occurs first (Const
1963, art 3, § 8; art 7, § 6; PA 1966, No 341).*

Request by Governor George Romney for advisory
opinion as to constitutionality of PA 1966, No 261.
Submitted January 4, 1967. (Calendar No. 10, Dock-
et No. 51,585.)   Statute declared unconstitutional
April 10, 1967.

*Amici Curiae:*

*Vander Veen, Freihofer & Cook (George R. Cook,*
of counsel), for Kent County.

*Charles A. Larnard,* for Michigan State Association of Supervisors.

*Tom Downs,* for Marvin R. Stempien.

*Rothe, Marston, Mazey, Sachs & O'Connell,* for Michigan State AFL-CIO.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Curtis G. Beck,* Assistant Attorney General, for the Attorney General.

SOURIS, J. (*dissenting*). Invoking the jurisdiction of this Court pursuant to the provisions of Const 1963, art 3, § 8,[1] the governor has requested our opinion whether PA 1966, No 261[2] violates Const 1963, art 7, § 7.

Article 7, § 7, reads as follows:

"A board of supervisors shall be established in each organized county consisting of one member from each organized township and such representation from cities as provided by law."

The effective date of PA 1966, No 261, if valid, was March 10, 1967, upon the expiration of 90 days following adjournment of the 1966 session of the legislature. Const 1963, art 4, § 27. The act provides for the apportionment of county boards of supervisors on the basis of supervisorial districts to be established as equal in population as is possible. It makes no provision for the automatic allocation of one supervisor to each organized township as is provided by article 7, § 7 of the Constitution.

---

[1] "Either house of the legislature or the governor may request the opinion of the supreme court on important questions of law upon solemn occasions as to the constitutionality of legislation after it has been enacted into law but before its effective date."

[2] See CL 1948, §§ 46.401–46.415 (Stat Ann 1968 Cum Supp § 5.359 [1] *et seq.*)—REPORTER.

In *Brouwer* v. *Kent County Clerk* (1966), 377 Mich 616, Chief Justice Kavanagh and Justices Adams and Smith joined with me in concluding that article 7, § 7 is invalid when tested by the requirements of the equality clause of the Fourteenth Amendment of the United States Constitution and the counterpart equality clauses of our State's Constitution, art 1, §§ 1 and 2, because it would require every township to be represented on its board of supervisors by one member, and only one, regardless of the population of the township. See parts IV, V, and VI of my opinion in *Brouwer, supra,* 377 Mich 616, 648–661.

Having concluded for the reasons stated in *Brouwer, supra,* that article 7, § 7 is invalid, it is my opinion, therefore, that that section is no constitutional obstacle to the validity of PA 1966, No 261.

T. M. Kavanagh, J., concurred with Souris, J.

Kelly, J.   Justice Souris, as the Justice to whom this case was assigned, has written the first opinion in response to Governor Romney's request, stating that for the reasons he set forth in his previous opinion in *Brouwer* v. *Kent County Clerk* (1966), 377 Mich 616, Const 1963, art 7, § 7, is invalid and, therefore, PA 1966, No 261, is valid.

Developments since our April, 1966, *Brouwer* decision cause me to enlarge my brief disagreement expressed to Justice Souris' opinion in that case.

On August 29, 1966, when we granted the governor's request, we invited the filing of *amici curiae* briefs, supplementing those previously submitted in *Brouwer* v. *Kent County Clerk, supra,* and *Muskegon Prosecuting Attorney, ex rel. Shaub,* v. *Klevering* (1966), 377 Mich 666.

Pursuant to our invitation, *amici curiae* briefs were filed by the attorney general, by the Michigan State AFL-CIO, by Tom Downs, attorney for *amicus curiae* State representative Marvin R. Stempien, by Kent county, and by the Michigan State Association of Supervisors.

Quoting from the attorney general's brief:

"Since the United States Supreme Court's decision in *Reynolds* v. *Sims* (1964), 377 US 533 (84 S Ct 1362, 12 L Ed 2d 506), and companion cases, a number of courts have passed upon the effect of those decisions on legislative bodies other than State legislatures and the majority have ruled that the principle of equal representation reaches to local subordinate instrumentalities of the State.    *    *    *

"PA 1966, No 261, is, in the view of the attorney general, clearly consistent with the majority of the decisions which have been rendered on the matter of the apportionment of local legislative bodies.

"If, in the application of the principle of equal representation to county boards as provided by Act No 261, there be any conflict with article 7, § 7 of Michigan's Constitution, then the attorney general is compelled by virtue of the authorities herein cited and by others previously cited in briefs filed with this Court, to conclude and suggest the necessity of finding article 7, § 7 to be violative of the equal protection clauses of the Federal and State Constitutions."

Quoting from the brief of Michigan State AFL-CIO:

"This Court, in *Brouwer* v. *Kent County Clerk* (1966), 377 Mich 616, and *Muskegon Prosecuting Attorney* v. *Klevering* (1966), 377 Mich 666, essayed the issues herein at length, and we do not propose to repeat those arguments.

"Suffice it to say that if the 'one man, one vote' principles of *Reynolds* v. *Sims* (1964), 377 US 533,

are applicable to local legislative bodies, as we submit they are, then Michigan Constitution 1963, art 7, § 7, necessarily falls, and PA 1966, No 261, clearly stands."

Quoting from the brief of the attorney for *Amicus Curiae* Stempien:

"*Amicus curiae* is chairman of the apportionment committee of the Michigan house of representatives. PA 1966, No 261, originated in this committee. In preparing the bill, *amicus curiae,* an attorney, made every effort to follow the spirit, the letter, and the historical thrust of the recent apportionment decisions of the United States Supreme Court. He believes that as chairman of the committee that originated PA 1966, No 261, he is in a unique position to provide the court information for its assistance.
\* \* \*

"Admittedly, the United States Supreme Court has not spoken on the specific question of population equality standards for election of boards of supervisors. But can there be any doubt that the court would strike down an attempt to do indirectly what may not be done directly? *Amicus curiae* contends that even though there is no United States Supreme Court decision directly in point on the makeup of boards of supervisors, the principle is well established that a legislature may not do indirectly what it is forbidden to do directly, and this by itself determines that boards of supervisors may not exercise legislative powers derived from the State legislature, unless such boards are based on the same constitutional requirement of equality of population as is required for the State legislature."

Quoting from the brief of the Michigan State Association of Supervisors:

"In the *Brouwer* v. *Kent County Clerk* and *Muskegon Prosecuting Attorney, ex rel. Shaub,* v. *Klevering* cases, the court wisely maintained the status quo until such time as the United States Supreme Court

decides whether or not the *Reynolds* v. *Sims* decision extends to county boards of supervisors.

"Citing the language of Justice ADAMS *In re Apportionment of State Legislature—1964*, 372 Mich 418, 473, speaking of Justice SOURIS's interpretation, said: 'It may well reflect the decision the United States Supreme Court will hand down any day now. When that day comes, I will be pleased to join with him. I do not conceive it to be the proper function of this Court to attempt to outrun the Supreme Court of the United States.' "

Kent county summarizes its position under the heading "Conclusion" as follows:

"For our conclusion, we cite what we consider to be the wise counsel of Mr. Justice BLACK in the *Muskegon Case,* supra:

" 'For once there is no need of haste. What is and what has been in Michigan for a century and a half will harm Michigan not at all should we retain jurisdiction and mark time pending such Federal disposition.' * * *

"PA 1966, No 261, and section 7 of article 7 of the Michigan Constitution cannot stand together. They are mutually antagonistic. The county of Kent does not take the position that the composition of boards of supervisors as spelled out in the Constitution is equitable, in a moral sense, or political wise. The county of Kent does, however, insist and submit that until the Constitution is amended by the people of this State or until the United States Supreme Court holds that the doctrine of *Reynolds* v. *Sims* applies to governmental bodies below that of the State capitol, it is the duty of this Court to uphold the constitutionality of our Constitution adopted only a short time ago by the people of this State. We do not argue for the status quo; we do not pretend to judge what the Supreme Court of the United States will do in the *Sailors Case*[1] [*Sailors* v. *Board of Education of Kent County,* 254 F Supp

---

[1] See footnote 1 at the bottom of p. 68.—REPORTER.

17 (May 2, 1966)], which has now been submitted to it on jurisdictional statement; but we do reiterate that whatever changes may be desirable and necessary in the composition of our board of supervisors must be accomplished either by an amendment to our Constitution or by a definitive ruling from the Supreme Court of the United States."

Summarizing, we find that the attorney general approved the legislative action because the majority of courts have decided to apply the one man-one vote, *Reynolds* v. *Sims* principle to local units of government, and that the UAW-CIO and Tom Downs (attorney for *amicus curiae* Stempien) interpret *Reynolds* v. *Sims* as controlling our decision here.

Justice SOURIS in his *Brouwer* opinion, *supra,* does not hold that *Reynolds* v. *Sims* controls our decision, as is evidenced by the following therefrom (pp 638–640, 642):

"As helpful to our task as the Supreme Court's *Reynolds* opinion is in its statement of general principles, there are claimed to be differences between *Reynolds* and this case of *Brouwer* in the nature of the rights asserted, and not just in degree, which it is claimed preclude our applying the principles of *Reynolds* v. *Sims*. Thus, while the Supreme Court found a 'constitutionally protected right to vote' for State legislators in section 2 of the Fourteenth Amendment and planted its decision in *Reynolds,* at least in part, upon that protected right, that section's language does not recognize an equivalent Federal right to vote for the legislative officers of a county, or city, or township. Furthermore, *Reynolds* clearly involved a citizen's right at a level of government no one could dispute was required to be representative in character whereas here we are concerned with a subordinate political subdivision of a State the representative character of which is not beyond dispute. In due course we shall examine these asserted differences in determining whether

the principles of *Reynolds* properly can be applied to the claims made in this appeal.

"One other preliminary consideration should be stated. Whether the Federal judiciary, concerned as it must be with its delicate relationships to the States, should entertain such claims which relate to the internal operations of State government, we need not decide, for decision of that question does not measure our duty. The claim is made to this State Court and is planted squarely upon the equal protection clause which we are sworn to uphold and apply whenever and however equality is denied by the State.

"Like my Brother O'HARA, *infra*, I do not believe the problem before us is so simple that a judicially valid answer can be given by direct analogy to *Reynolds* v. *Sims*. As I have tried to make clear immediately above, there are many differences between the apportionment of a State's legislative power in accordance with equality clause requirements, with which *Reynolds* v. *Sims* was concerned exclusively, and our task of determining whether the equality clause has any bearing whatever, and if so what, upon the apportionment of a county's legislative power.

"While I agree that the differences are too great to permit reliance upon simple and direct analogy to *Reynolds,* as other courts in the country confronted with this problem have done and as I have attempted to avoid doing, I do not regard it an adequate exercise of the judicial function we were elected to perform simply to sweep the learned circuit judge's opinion aside on the apparent ground that until the United States Supreme Court rules on the issue no State court should consider and decide a legitimate assertion by citizens that their Federal, as well as State, constitutional right to equality has been denied them.   *   *   *

"We have noted in Part II, above, that *Reynolds* v. *Sims* and the other State legislative apportion-

ment cases contemporaneously decided do not control decision herein."

Attorney Downs in his *amicus curiae* brief states:

"The Michigan Supreme Court, both the individuals thereof and as an entity, has spent more time and research on the question of apportionment than has any other State Supreme Court. It may very well be that the Michigan court has expended more effort on this single issue than all other State courts combined."

This Court's efforts of the past have established that: (1) Those who have tried to have the constitutional issue now being considered declared invalid have failed to obtain a majority vote of this Court; and (2) This Court has agreed with Justice Souris' finding "that *Reynolds* v. *Sims* and the other State legislative apportionment cases contemporaneously decided do not control decision herein."

Without relying on *Reynolds,* my Brother makes a brillant effort to convince us that we should hold invalid article 7, § 7, of our Constitution,* but he does not convince me, especially in view of the presumption of validity and the fact that the provision we are now considering has stood the test of time.

Justice Souris in *Brouwer* calls attention to the history of county governments, as follows (pp 640, 641):

"Counties have existed in Michigan since territorial days and have been recognized in all of our Constitutions as a unit of government important to the people in the exercise of their right of local self-government. Beginning with our first Constitution in 1835 and repeated in our Constitutions of 1850,

---

* "A board of supervisors shall be established in each organized county consisting of one member from each organized township and such representation from cities as provided by law."

1908, and 1963, the people of this State guaranteed themselves this right of local self-government by reserving for each county's citizens the right to elect certain of the officials of the county.  Since our 1850 Constitution at least, and probably earlier as a matter of immemorial usage, the power to legislate regarding the local affairs of each county has been reposed in a county board of supervisors.  The membership of the boards of supervisors, again since at least 1850, has consisted of one supervisor elected from each organized township and such representation from cities as may be provided by law."

My final observation of occurrences since our *Brouwer* opinion is directed toward the difference between the record of events preceding *Brouwer* and the record before us today.  Our *Brouwer Case* came to us through regular legal channels where registered voters in the city of Grand Rapids, by complaint, requested the Kent county circuit court to declare void the same constitutional provision. The complainants convinced the trial judge, but failed to convince the majority of this Court.  We are now, at the Governor's request, passing judgment on an enactment that is clearly inconsistent with an unambiguous provision of the Constitution.

Justice SOURIS is the only member of this Court who has answered the Governor's request for an opinion, previous to my writing, and I do not presume to forecast the answer of the remaining members of our Court.  I do contend, however, that unless a majority of our Court decide to approve this unusual legislative action, then our Court order should clearly declare that the Constitution prevails until further order of this Court.

My answer to the Governor: The constitutional provision is valid and, therefore, PA 1966, No 261, is not.

DETHMERS, C. J., and BLACK, O'HARA, and BREN-
NAN, JJ., concurred with KELLY, J.

BLACK, J. (*concurring*).   I agree with Justice
KELLY that his response to the governor's request
for an advisory opinion should be released at once.

Act No 261, *if valid,* has just gone into effect
(March 10, 1967).   The Court not having responded
to the Governor's request thus far, and state-wide
administrative action now being under way which
depends solely upon the validity of said Act No 261,
it seems to me that such administrative proceedings
should for the time being be stayed by an advisory
opinion warning that said Act No 261 hangs pres-
ently in delicate legal balance; most certainly until
the Supreme Court determines *the Sailors* (No. 430),
*Bianchi* (No. 491), *Moody* (No. 624) and *Dusch* (No.
724) *Cases.*[1]   See 17 L ed 2d at 431 and 17 L ed 2d
at 540.   These administrative proceedings may in
the ultimate turn out to be quite as invalid as we
presently find Act No 261, not only on account of the
constitutional sections considered in the *Kent* and
*Muskegon Cases* (377 Mich 616–673)[2] but also on
account of recent suggestion of a Brother Justice
that section 2 of the same article (Const 1963, art
7, § 7) may prohibit legislation on the order of said
Act No 261.

It is time to act and is safe to act in this instance.
The reason lies in the nonprecedential and nonadju-
dicatory nature of an advisory opinion issued pur-
suant to Const 1963, art 3, § 8.   Should the United
States Supreme Court rule, directly or by necessary
implication, that all or any portion of said article 7
is invalid, an advisory opinion denying validity of
said Act No 261 will amount to no more than would

---

[1] See footnotes 1, 2, and 3 at bottom of p. 68.—REPORTER.

[2] *Brouwer* v. *Kent County Clerk* (1966), 377 Mich 616, and *Mus-
kegon Prosecuting Attorney, ex rel. Schaub,* v. *Klevering* (1966), 377
Mich 666.—REPORTER.

a judicially reversed opinion of an attorney general. On the other hand, should we delay further, costly and wholly unnecessary administrative actions in the respective counties of Michigan, all looking toward execution of said Act No 261, will proceed apace. No harm of any moment can result should any deadline fixed by the act expire without required statutory action. The whole matter ultimately and of reasonable surety will be in the hands of Michigan's "one court of justice" should Act No 261 survive (see sections 6 through 9 of said Act No 261). The judicial process then will superintend the procedures called for by the act with such expedition as may at the time be in order.

. . As some respected legal minds seem to forget, this is not a judicial proceeding at all. In no sense, even though an opinion signed by five or more Justices should come to present release, would such an opinion be or become a judicial determination, or a precedent of any kind, or a judgment binding on or enforceable against anyone, *the Court and its membership significantly included.* Mr. Justice FELLOWS, writing for the Court in *Anway* v. *Grand Rapids Railway Co.,* 211 Mich 592, 603, 604, set all this straight in his typically direct way:

"We are mindful of the fact that in seven of the States of the Union (Colorado, Florida, Maine, Massachusetts, New Hampshire, Rhode Island and South Dakota) by the constitutions of those States the legislative or executive departments may request opinions of the Supreme Court on important questions; but we are likewise mindful that such opinions are regarded as expressing the views of the justices and not a judicial determination of the question by the court; and such opinions are not regarded as binding upon the legislature, the executive, or the court itself; indeed, the court does not act as a court

in rendering such opinions but as the constitutional advisers of the other departments of the government. *Opinion of the Justices*, 126 Mass .557, 566; *State* v. *Cleveland*, 58 Me 564, 573; *Green* v. *Commonwealth*, 12 Allen (94 Mass) 155, 164."[3]

Justice KELLY responds to the Governor that "The constitutional provision [to which he refers] is valid and, therefore, PA 1966, No 261, is not." I agree.

ADAMS, J. (*dissenting*). I dissent, being of the opinion the Court should defer its opinion in this matter until the United States Supreme Court hands down its decisions in the *Sailors* (No. 430),[1] *Bianchi* No. 491),[2] *Moody* (No. 624),[2] and *Dusch* (No. 724)[3] *Cases* or until that Court ends its present term, whichever occurs first. See 35 US Law Week 3349 (April 4, 1967).

---

[3] "Since in an advisory opinion there is no decision, such an opinion of a court does not have *stare decisis* effect." (20 Am Jur 2d Courts, § 189, pp 524, 525, citing in support *Re House Resolutions Concerning Street Improvements*, 15 Colo 598 [26 P 323]; *Opinion of the Justices*, 266 Mass 590 [165 NE 904, 63 ALR 952]; *Opinion of Justices*, 81 NH 566 [129 A 117, 39 ALR 1023]).

---

[1] *Sailors* v. *Board of Education of the County of Kent* (1967), 387 US 105 (87 S Ct 1549, 18 L ed 2d 650).—REPORTER.

[2] *Board of Supervisors of Suffolk County, New Jersey*, v. *Bianchi* (*Moody* v. *Flowers*) (1967), 387 US 97 (87 S Ct 1544, 18 L ed 2d 643).—REPORTER.

[3] *Dusch* v. *Davis* (1967), 387 US 112 (87 S Ct 1554, 18 L ed 2d 656).—REPORTER.