CASSIDY v McGOVERN

HERMANN v HANEY

Docket Nos. 65385, 65753. Argued October 14, 1981 (Calendar Nos. 7,
    8).—Decided December 23, 1982. Rehearing denied 417 Mich
    1104.

Leo T. Cassidy and Ardith M. Cassidy brought an action in the
    Emmett Circuit Court against Terrance McGovern, the driver
    of an automobile which collided with an automobile driven by
    Leo Cassidy, Peter H. Seaton, the owner of the automobile
    driven by McGovern, and Seaton Industries, Inc., McGovern's
    employer. Leo Cassidy alleged serious impairment of body
    function because of the complete fracture of both bones of his
    lower right leg. Prior to trial, the defendants admitted liability,
    but reserved the question whether Leo Cassidy's injuries
    amounted to a serious impairment of body function under the
    no-fault act so as to allow recovery in tort. The plaintiffs moved
    for a directed verdict on that issue, but the trial court ruled
    that it was able only to submit the question to the jury. The
    jury returned a verdict for the defendants. The Court of Ap-
    peals held that the trial court had the authority to decide the
    motion and remanded. On remand, the trial court, Martin B.
    Breighner, J., ruled that the injuries did not amount to a
    serious impairment of body function as a matter of law and
    that presentation of the issue to the jury was proper. The Court
    of Appeals, Allen, P.J., and M. F. Cavanagh and Simon, JJ.,
    affirmed (Docket No. 44507). The plaintiffs appeal.

Barbara Jean Hermann and Michael Hermann brought an action
    in the Wayne Circuit Court against Edwin M. Haney, the
    driver of an automobile which collided with an automobile
    driven by Chester R. Hackney, and against Hackney, whose
    automobile, as a result of the collision with Haney, collided
    with an automobile driven by Barbara Jean Hermann. Barbara
    Jean Hermann alleged serious impairment of body function

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4, 5] 7 Am Jur 2d, Automobile Insurance §§ 34, 349, 358.
    Validity and construction of "no-fault" automobile insurance plans.
        42 ALR3d 229.
[3] 20 Am Jur 2d, Courts § 189.

because of bruised legs and knees, a bump on the head, and neck and back injuries. The defendants moved for summary judgment on the ground that she had not suffered serious impairment of body function. The trial court, John M. Wise, J., granted the motion. The Court of Appeals, R. M. Maher, P.J., and Cynar, J. (M. F. Cavanagh, J., dissenting), affirmed (Docket No. 43683). The plaintiffs appeal.

In an opinion by Justice Coleman, joined by Chief Justice Fitzgerald and Justices Williams, Levin, and Ryan, the Supreme Court *held:*

Whether an injury is a serious impairment of body function under the no-fault act is a question of statutory construction to be decided by the trial court. When there is no factual dispute regarding the nature and extent of a plaintiff's injuries or where a factual dispute is not material to the determination, the court must decide as a matter of law whether the plaintiff has suffered a serious impairment of body function.

1. The no-fault act assures adequate recovery without regard to fault for basic economic losses such as medical expenses and wage losses. For recovery of economic losses not guaranteed by the act, the traditional tort remedy is available. Recovery in tort for noneconomic losses, however, is limited under the act to cases involving death, serious impairment of body function, or permanent serious disfigurement.

2. The phrase "serious impairment of body function" must be considered in conjunction with "death" and "permanent serious disfigurement". The Legislature did not intend to erect two significant obstacles to a tort action for noneconomic loss and one quite insignificant obstacle. Nor did it intend that the threshold limit of serious impairment of body function vary according to the specific jury involved or the specific community in which a case is tried. Although the requirement lacks specificity, the responsibility for effectuating the will of the Legislature is primarily a matter of law for the court and is not properly a question for the trier of fact. The meaning of the requirement therefore, is a matter to be determined by the court by statutory construction. The Legislature intended an objective standard which looks to the effect of an injury on a person's general ability to live a normal life. "Impairment of body function" refers to important body functions. Thus, where there is no factual dispute regarding the nature and extent of a plaintiff's injuries, or where the dispute is not material to the requirement, whether the plaintiff's injuries satisfy the thresh-

old requirement of serious impairment of body function is to be decided by the court as a matter of law.

3. In *Hermann,* the extent of the plaintiff's injuries was not disputed and the injuries were not sufficiently serious to satisfy the threshold requirement of serious impairment of body function. The summary judgment for the defendant was proper. In *Cassidy,* it was undisputed that the plaintiff suffered injuries which met the threshold requirement. The injuries were not general aches and pains, but two broken bones. The injury interfered with walking, which is an important body function. The broken bones, combined with the length of the plaintiff's hospitalization and the duration of the residual effects of the injuries, amount to a serious impairment of body function even though the impairment was not permanent.

*Cassidy* reversed and remanded.

*Hermann* affirmed.

Justice Kavanagh, concurring in part and dissenting in part, would hold that Leo Cassidy's fracture of both lower bones of one leg amounts to serious impairment of body function as a matter of law. Whether Barbara Jean Hermann's injuries amounted to serious impairment of body function is a question to be determined by the trier of fact.

1. The no-fault act provides that a person remains subject to tort liability for noneconomic loss caused by his ownership, maintenance, or use of a motor vehicle, but only if the injured person suffers death, serious impairment of body function, or permanent serious disfigurement. Serious impairment of body function is not a standard readily amenable to judicial definition, but is sufficiently definite for interpretation and acquires meaning as a result of case-by-case application by reference to the goals of the no-fault act and the rules of statutory construction. An injury need not be permanent or fatal to seriously impair body function, nor must it disfigure the injured person.

2. The Legislature, in enacting the no-fault act, sought to remedy the overcompensation of minor injuries, long payment delays, an overburdened court system, and discrimination against persons with low income and little education by providing liability without fault in the place of traditional tort recovery except in the case of serious loss. Whether the threshold for serious impairment of body function is met may be decided as a matter of law where reasonable persons would not reach different conclusions with respect to the seriousness of the injury. Otherwise, the question is one for the trier of fact.

3. In the light of the spirit and purpose of the no-fault act,

complete fracture of both bones of the lower right leg is a
serious impairment of body function as a matter of law, and
the question whether the injury met the threshold should not
have been submitted to the jury in *Cassidy.* All reasonable
persons might not agree that Barbara Jean Hermann's injuries
amounted to serious impairment of body function, however. In
*Hermann,* the threshold issue should have been presented to
the jury. The summary judgment was error.

98 Mich App 100; 296 NW2d 200 (1980) reversed.

98 Mich App 445; 296 NW2d 278 (1980) affirmed.

### OPINION OF THE COURT

1. AUTOMOBILES — NO-FAULT ACT — TORT LIABILITY — SERIOUS
   IMPAIRMENT OF BODY FUNCTION.

   Whether an injury is a serious impairment of body function
   under the no-fault act so as to give rise to tort liability for
   noneconomic loss is a question of statutory construction to be
   decided by the trial court; where there is no factual dispute
   regarding the nature and extent of a plaintiff's injuries or
   where a factual dispute is not material to the determination,
   the court must decide as a matter of law whether the plaintiff
   has suffered a serious impairment of body function (MCL
   500.3135; MSA 24.13135).

2. AUTOMOBILES — NO-FAULT ACT — SERIOUS IMPAIRMENT OF BODY
   FUNCTION.

   A serious impairment of body function under the no-fault act is
   to be measured by an objective standard which looks to the
   effect of an injury on a person's general ability to live a normal
   life; so viewed, an injury, to meet the threshold, must impair
   an important body function (MCL 500.3135; MSA 24.13135).

3. COURTS — ADVISORY OPINIONS — CONSTITUTIONAL LAW — PRECE-
   DENT.

   Advisory opinions of the Supreme Court are not precedentially
   binding; in such opinions, the Court addresses questions with-
   out having before it adverse parties to existing controversies
   and acts not as a court, but as the constitutional adviser of the
   other departments of government; such opinions may be per-
   suasive, but a proposition stated without explanation or discus-
   sion in the course of deciding questions posed is not strongly
   persuasive (Const 1963, art 3, § 8).

OPINION CONCURRING IN PART BY KAVANAGH, J.

4. AUTOMOBILES — NO-FAULT ACT — TORT LIABILITY — SERIOUS
   IMPAIRMENT OF BODY FUNCTION.

   *A person remains subject to tort liability for noneconomic loss
   caused by his ownership, maintenance, or use of a motor
   vehicle only where the injured person suffers death, serious
   impairment of body function, or permanent serious disfigure-
   ment (MCL 500.3135[1]; MSA 24.13135[1]).*

5. AUTOMOBILES — NO-FAULT ACT — SERIOUS IMPAIRMENT OF BODY
   FUNCTION.

   *The threshold question whether, under the no-fault act, an injury
   is a serious impairment of body function, enabling the injured
   person to recover noneconomic losses in tort, must be deter-
   mined in each case in the light of the spirit and purpose of the
   act; where reasonable persons would not reach different conclu-
   sions with respect to the seriousness of an injury, a trial court
   may determine that the threshold has been met as a matter of
   law; otherwise, the question is one for the trier of fact (MCL
   500.3135[1]; MSA 24.13135[1]).*

*John D. Hayes* for plaintiffs Cassidy.

*Jack Carpenter* for defendants McGovern, Sea-
ton, and Seaton Industries.

*Posner, Posner & Posner* (by *Samuel Posner* and
*Gerald F. Posner)* for plaintiffs Hermann.

*Collins, Einhorn & Farrell, P.C.* (by *Dale J.
McLellan* and *Noreen L. Slank),* for defendant
Haney.

*Mitchell & Leon* (by *Robert I. Morrison)* and
*Gromek, Bendure & Thomas* (by *Carl L. Gromek*
and *Nancy L. Bosh)* for defendant Hackney.

Amicus Curiae:

*Lopatin, Miller, Freedman, Bluestone, Erlich &
Rosen* (by *Steven G. Silverman)* for Michigan Trial
Lawyers Association.

COLEMAN, J. In these cases, we examine the nature of the exception to tort immunity that exists under the motor vehicle no-fault act for noneconomic loss suffered in cases of "serious impairment of body function". MCL 500.3135; MSA 24.13135. We hold that the question what injuries come within the class denominated as the "serious impairment of body function" is a question of statutory construction to be decided by the court. When there is no factual dispute regarding the extent of a plaintiff's injuries, or when any factual dispute does not straddle the line demarcating those injuries which constitute the serious impairment of body function, the court is to decide as a matter of law whether plaintiff has suffered a serious impairment of body function. In both of the present cases, the question whether there existed such an injury was a matter of law for the court. In *Hermann v Haney,* we affirm the granting of summary judgment for the defendant. In *Cassidy v McGovern,* we reverse the denial of plaintiff's motion for a directed verdict.

I

*Hermann v Haney*

Barbara Hermann and her husband, Michael Hermann, commenced this action on March 29, 1978. They alleged that Barbara Hermann had been involved in an automobile accident on July 25, 1975, caused by defendants' negligence. She sought damages for her injuries, and her husband sought damages for loss of consortium. The complaint contained allegations that plaintiff had suffered injuries to her back, neck, head, shoulders, arms, and legs, as well as abrasions, contusions, and headaches. Plaintiffs further alleged that she

had suffered a serious impairment of body function.

Defendants took Barbara Hermann's deposition. She testified that in the accident her head hit the windshield and her legs hit the dashboard. She was unconscious briefly, but regained consciousness when the police arrived. She was taken by ambulance to the Wayne County General Hospital, where x-rays were taken, and she was given one pain pill for her head and released.

She testified that she had suffered a bump on her head and bruises on her knees from the accident, but no other visible signs of injury. The bump on her head cleared up in one month, and the bruises in two months. The bruises did not cause difficulty for her. They were neither painful nor did they prevent standing or sitting.

However, she testified in the deposition that two days after the accident her neck and back began to bother her. Upon the recommendation of her attorney, she went to see Dr. Rosenberg. She visited Dr. Rosenberg's office nine times in approximately the month following the accident, and each time received a treatment with hot pads for her back and neck. No medication was prescribed. Her medical bill was $185.

Upon Dr. Rosenberg's recommendation, she stopped working. She was an operator for Michigan Bell and would experience pain if she would sit too long. She stayed at home in bed, and did no housecleaning. When she started feeling better approximately one month after the accident, she returned to work and was also able to resume housework. Her neck and back bothered her "a

little bit" when she returned to work, but she was able to work a full shift, and none of her activities were restricted. Within two months after the accident, she had no problems with her back and neck. Apart from Dr. Rosenberg and other doctors in his office, she saw no other physician regarding her injuries.

After taking Barbara Hermann's deposition, defendants separately filed motions for summary judgment, pursuant to GCR 1963, 117.2(1) and (3). Defendants contended that her deposition indicated that she had not suffered a serious impairment of body function. The trial judge granted summary judgment for defendants and dismissed plaintiff's cause of action. In denying plaintiff's request to vacate the judgment when considering plaintiff's motion for rehearing, the trial judge stated, "For you to be allowed to continue to institute these types of cases as set forth in your complaint, as set forth in your motion for * * * rehearing, would be entirely contrary to the whole theory of no-fault".

Plaintiffs appealed to the Court of Appeals, arguing that the question whether Barbara Hermann's injuries met the threshold of serious impairment of body function was a question of fact for the jury. The Court of Appeals affirmed, *Hermann v Haney,* 98 Mich App 445; 296 NW2d 278 (1980). Judge MAHER, writing for affirmance, articulated the question as "whether it can be said with certainty that no reasonable jury could view Mrs. Hermann's alleged impairment of body function as 'serious' under MCL 500.3135; MSA 24.13135. See *McKendrick v Petrucci,* 71 Mich App 200; 247 NW2d 349 (1976)". Noting several cases, however, in which the Court of Appeals had ruled

as a matter of law that the threshold had not been met, he identified a nonexclusive list of factors pertinent to the determination:

"[E]ither the initial injury must be severe or the effects must be continuing—either permanent or long-term. Among the factors to be considered are the extent of the injury, treatment required, duration of disability, extent of residual impairment and prognosis for eventual recovery." 98 Mich App 449.

In this case, he concluded that summary judgment was proper because plaintiff's injuries were neither severe nor long-term, required only minimal treatment, and left no residual impairment. Judge CYNAR concurred only in the result. Judge CAVANAGH dissented. Agreeing that this was the type of injury that the Legislature had intended to keep out of court, he nevertheless concluded that absent further definition of "serious impairment of body function" by this Court or the Legislature, the question, except in extreme cases, was for the trier of fact.

*Cassidy v McGovern*

Leo Cassidy and his wife, Ardith Cassidy, sued defendants alleging that they were entitled to damages for the noneconomic losses they suffered as a result of an automobile accident on August 8, 1975, in which Leo Cassidy was injured. Defendants admitted negligence and waived contributory negligence. The only issue in the jury trial held May 9-11, 1977, was whether Leo Cassidy's injuries met the threshold of serious impairment of body function under the no-fault act, and if so, the amount of damages.

The evidence at trial indicated that as a result of the accident in which Leo Cassidy was thrown from the automobile, he suffered various injuries,

including two broken bones in his lower right leg. He was taken by ambulance to Little Traverse Hospital and remained hospitalized there for the next 18 days. Dr. Kleinstiver, his treating physician since the night of the injury, testified that the fractures in both bones were complete, but did not break the skin. During the course of the seven months following the accident, Leo Cassidy wore four casts, the last being removed in March, 1976. During much of this time he used a walker, being unable to use crutches because of dizzy spells.

Dr. Kleinstiver testified that x-rays taken on May 3, 1976, showed that the fractures had healed well and that there was no question that they had completely healed by April of 1977, the last time he saw the plaintiff. Leo Cassidy, on his visit to Dr. Kleinstiver in April of 1977, however, complained of pains in the area of the break that would come and go, but were more troublesome when he was active. Dr. Kleinstiver gave him medication for the soreness. Dr. Kleinstiver stated that those pains could possibly have been caused by the scar tissue that would accompany the healing of the bones. The doctor testified, though, that while Mr. Cassidy did seem to have a little trouble with his leg in April of 1977, basically Mr. Cassidy had returned to normal and there was no significant residual damage from the injury.

Leo Cassidy testified that he is a potato farmer and that since the accident he has had to cut back on some of the activities incident to that type of work. He stated that his leg has continued to give him trouble and that it has returned only to about 50% of normal.

The defendant's only witness was Dr. Hume, who examined Mr. Cassidy on December 17, 1976. He noticed that Mr. Cassidy walked with a limp,

the authenticity of which Dr. Hume did not question. The x-rays he took, however, showed that the fractures were well-healed. From his examination of Mr. Cassidy, the leg appeared capable of normal activity. Dr. Hume had no explanation for the continuing soreness that Mr. Cassidy described to him, and he testified that he thought that the problem would clear up.

At the close of proofs, plaintiffs moved for a directed verdict on the question whether there had been a serious impairment of body function. They argued that this question could be decided as a matter of law, and that only the question of damages should go to the jury. The trial judge concluded that the question was one of fact for the jury, and denied the motion. The case was then given to the jury, and the jury returned a verdict of no cause of action. Plaintiffs filed a motion for a new trial, which the trial court denied.

On plaintiffs' appeal, the Court of Appeals concluded that the trial judge might have mistakenly been of the view that the question whether there was serious impairment of body function was always a question of fact for the jury. It remanded to the trial court with instructions that a directed verdict could be granted for plaintiffs if the injury was sufficient to meet the threshold of serious impairment of body function as a matter of law. *Cassidy v McGovern,* 86 Mich App 321; 272 NW2d 644 (1978). On remand, the trial judge again denied the motion for directed verdict, concluding that on the basis of the evidence presented reasonable people could differ concerning whether Leo Cassidy had suffered serious impairment of body function. Hence, the issue could not be decided as a matter of law.

On the second appeal to the Court of Appeals,

plaintiff again argued that the threshold issue should have been decided as a matter of law. The Court of Appeals affirmed the trial court, agreeing with the trial judge that, on the basis of evidence presented, reasonable minds could differ. Judge CAVANAGH concurred in the result, disagreeing with the finding that plaintiff had not met the threshold, but believing that, nevertheless, the question was for the jury. *Cassidy v McGovern,* 98 Mich App 100; 296 NW2d 200 (1980).

This Court initially denied leave to appeal in *Cassidy v McGovern.* Plaintiff then filed a motion for rehearing. This Court treated it as a motion for reconsideration, and granted leave to appeal in both *Cassidy* and *Hermann* on March 27, 1981.

## II

Two important questions arising under the no-fault act are presented in these cases. The act provides:

"A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, *serious impairment of body function,* or permanent serious disfigurement." MCL 500.3135; MSA 24.13135. (Emphasis added.)

The first question we must consider is the extent to which the determination of serious impairment of body function is a matter of law. The second question is what does serious impairment of body function mean?

## A

This Court first had occasion to consider MCL 500.3135; MSA 24.13135 in an advisory opinion, which addressed, *inter alia,* the question:

"Are the phrases 'serious impairment of body function' and 'permanent serious disfigurement' as used in § 3135 of the Act 'sufficient for legal interpretation?' "
*Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 462; 208 NW2d 469 (1973).

This Court concluded that such phrases were capable of legal interpretation and, assuming that the question was one for the trier of fact, concluded that such phrases are comparable to other questions that triers of fact must answer. The Court wrote:

"This Court holds that such phrases are capable of legal interpretation and, indeed, that juries or judges sitting without juries frequently have and do interpret comparable phrases bearing upon various facets of the law. Such findings result from denominated fact questions and thus are within the exclusive province of the triers of fact. Only when interpretation approaches or breaches permissible limits does it become a question of law for the Court. Such questions must be approached on a case by case basis."

In the opinion, however, this Court emphasized "the fact that an advisory opinion does not constitute a decision of the Court and is not precedentially binding in the same sense as a decision of the Court after a hearing on the merits". 389 Mich 460, fn 1. See, also, 389 Mich 483-484 (LEVIN, J., *concurring).*

The Court of Appeals, in *McKendrick v Petrucci,* 71 Mich App 200, 210-212; 247 NW2d 349 (1976), gave deference to this portion of *Advisory Opinion,* despite questioning the wisdom of allowing serious impairment of body function to be a question of fact for the jury. The trial court in *McKendrick* had granted summary judgment for the defendant. Although there was no dispute regarding the ex-

tent of plaintiff's injury, plaintiffs argued on appeal that the question whether plaintiff suffered serious impairment of body function was one of fact for the jury, citing the strict standards in *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). The Court of Appeals considered *Rizzo* distinguishable on the ground that the determination of intoxication under the dramshop act is dissimilar to the determination of serious impairment of body function under the no-fault act:

"The former, properly called a factual determination, does not require the assignment of values or application of a rule of law. In this sense, determining whether or not a person was intoxicated at a particular time is similar to determining whether or not a person has suffered any impairment to a particular body function. To determine that there has been a *serious* impairment of body function, however, requires not only that an impairment be found but also that it be assigned a value." 71 Mich App 209-210.

The Court expressed its inclination that this question should be for the court, but because of *Advisory Opinion* felt constrained to leave the question to the trier of fact. Finding that reasonable people could differ on the question whether plaintiff had suffered a serious impairment of body function, it reversed summary judgment given for the plaintiff.

The Court of Appeals has followed the *McKendrick* decision and has treated the determination of serious impairment of body function as a factual question for the trier of fact. Summary judgment has been considered inappropriate except in those cases where reasonable people cannot differ. See, *e.g., Earls v Herrick,* 107 Mich App 657; 309 NW2d 694 (1981), *Abraham v Jackson,* 102 Mich App 567; 302 NW2d 235 (1980), *Watkins v City*

*Cab Corp,* 97 Mich App 723; 296 NW2d 162 (1980).
There have, however, been cases in which the
Court of Appeals has held as a matter of law that
plaintiff's injuries do not constitute a serious im-
pairment of body function. *Brooks v Reed,* 93 Mich
App 166; 286 NW2d 81 (1979), *Harris v McVickers,*
88 Mich App 508; 276 NW2d 629 (1979), *Vitale v
Danylak,* 74 Mich App 615; 254 NW2d 593 (1977).

In evaluating the threshold requirement of MCL
500.3135; MSA 24.13135, we are persuaded of the
correctness of the statement in *Advisory Opinion,*
389 Mich 460, fn 1, that advisory opinions are not
precedentially binding. Such opinions are autho-
rized by the Constitution of 1963, art 3, § 8:

"Either house of the legislature or the governor may
request the opinion of the supreme court on important
questions of law upon solemn occasions as to the consti-
tutionality of legislation after it has been enacted into
law but before its effective date."

As was the case in *Advisory Opinion,* the request
for such an opinion comes before the law takes
effect. The Court addresses the question without
having before it any adverse parties to an existing
controversy. Thus, as stated in *Anway v Grand
Rapids R Co,* 211 Mich 592, 603; 179 NW 350
(1920),

"such opinions are regarded as expressing the views of
the justices and not a judicial determination of the
question by the court; and such opinions are not re-
garded as binding upon the legislature, the executive,
or the court itself; indeed, the court does not act as a
court in rendering such opinions but as the constitu-
tional advisers of the other departments of the govern-
ment."

See, also, *Advisory Opinion re Constitutionality of*

*1966 PA 261,* 379 Mich 55; 149 NW2d 443 (1967)
(BLACK, J., *concurring).* Although advisory opinions
are not binding, they may be persuasive. However,
a proposition contained in such an opinion when
made without explanation or discussion in the
course of deciding the questions posed is not
strongly persuasive. This Court's statement assum-
ing that "serious impairment of body function" is
a fact question is such a proposition. It was a
statement made without discussion and based on
assumptions about trial procedure in trials that
had not yet occurred. Its validity will have to find
a basis other than stare decisis.

B

The abolition of tort liability for noneconomic
loss except in cases of death, serious impairment of
body function, or permanent serious disfigurement,
MCL 500.3135; MSA 24.13135, must be viewed in
light of the overall goals of the no-fault act. In
*Shavers v Attorney General,* 402 Mich 554, 578-
579; 267 NW2d 72 (1978), this Court wrote:

"The goal of the no-fault insurance system was to
provide victims of motor vehicle accidents assured,
adequate, and prompt reparation for certain economic
losses. The Legislature believed this goal could be most
effectively achieved through a system of *compulsory*
insurance, whereby every Michigan motorist would be
required to purchase no-fault insurance or be unable to
operate a motor vehicle legally in this state. Under this
system victims of motor vehicle accidents would receive
insurance benefits for their injuries as a substitute for
their common-law remedy in tort.

"* * * The act's personal injury protection insurance
scheme, with its comprehensive and expeditious benefit
system, reasonably relates to the evidence advanced at
trial that under the tort liability system the doctrine of
contributory negligence denied benefits to a high per-
centage of motor vehicle accident victims, minor inju-

ries were overcompensated, serious injuries were under-compensated, long payment delays were commonplace, the court system was overburdened, and those with low income and little education suffered discrimination."

A basic understanding of the mechanisms by which the no-fault act seeks to improve upon traditional tort liability is important to the resolution of the issues in this case.

Through the insurance made compulsory under the act, the Legislature assured adequate recovery without regard to fault for economic losses.[1] Medical expenses are covered, as are basic wage losses.[2] By specifying who is to pay and how much is to be paid, litigation concerning these matters generally becomes unnecessary, especially since negligence is no longer an issue. The problem of undercompensating serious injuries is remedied to the extent that recovery for economic loss is assured.

The act does not, however, assure payment for all economic losses, nor for noneconomic losses.[3] This is significant, for it shows a policy determination on the part of the Legislature that a specified recovery for basic economic losses is of primary importance. Nevertheless, it is apparent that an injured person may suffer significant losses other than those for which the act guarantees recovery without regard to fault. For economic losses beyond those for which payment was assured, the traditional tort remedy was left intact.[4] However, the traditional tort remedy for noneconomic losses for which no payment was assured under the act was not left wholly intact.[5]

[1] MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.*

[2] MCL 500.3107; MSA 24.13107.

[3] See MCL 500.3107; MSA 24.13107.

[4] MCL 500.3135(2)(c); MSA 24.13135(2)(c).

[5] MCL 500.3135(1); MSA 24.13135(1).

At least two reasons are evident concerning why the Legislature limited recovery for noneconomic loss, both of which relate to the economic viability of the system. First, there was the problem of the overcompensation of minor injuries. Second, there were the problems incident to the excessive litigation of motor vehicle accident cases. Regarding the second problem, if noneconomic losses were always to be a matter subject to adjudication under the act, the goal of reducing motor vehicle accident litigation would likely be illusory. The combination of the costs of continuing litigation and continuing overcompensation for minor injuries could easily threaten the economic viability, or at least desirability, of providing so many benefits without regard to fault. If every case is subject to the potential of litigation on the question of noneconomic loss, for which recovery is still predicated on negligence, perhaps little has been gained by granting benefits for economic loss without regard to fault.

Regarding the trade-off involved in no-fault acts, 7 Am Jur 2d, Automobile Insurance, § 340, p 1068, contains the following:

"It has been said of one such plan that the practical effect of the adoption of personal injury protection insurance is to afford the citizen the security of prompt and certain recovery to a fixed amount of the most salient elements of his out-of-pocket expenses * * *. In return for this he surrenders the possibly minimal damages for pain and suffering recoverable in cases not marked by serious economic loss or objective indicia of grave injury, and also surrenders the outside chance that through a generous settlement or a liberal award by a judge or jury in such a case he may be able to reap a monetary windfall out of his misfortune." (Footnotes omitted.)

Thus, it is apparent that the threshold requirements for a traditional tort action for noneconomic loss play an important role in the functioning of the no-fault act.

We believe several considerations are instructive in determining whether the threshold requirement of "serious impairment of body function" is primarily a phrase presenting a fact question for the trier of fact, or a phrase requiring judicial definition as a matter of law. First, it is not a term commonly used, for which juries would have a clear sense of the intended meaning. Hence, the phrase differs from "intoxication", as used in the dramshop act, see *Rizzo v Kretschmer, supra.* It also differs from more specific requirements that could have been enumerated as threshold requirements for the no-fault act, *e.g.,* broken bones, dismemberment, etc.

Second, and important especially in conjunction with the first factor, one of the important reasons behind the no-fault act was to reduce litigation in automobile accident cases. Considering that the phrase involved is unspecific and one concerning which reasonable minds can usually differ regarding specific applications, if the interpretation of the phrase is a matter to be left to the trier of fact, a trial would in most instances be required to determine whether the threshold requirements have been met. Such a consequence would certainly be contrary to the legislative intent in creating the threshold requirements.

Third, we cannot believe that the Legislature, when limiting the continued existence of traditional tort liability to certain specified exceptions, intended that the limits which they created would vary according to the specific jury impaneled or the specific part of the state in which a case was to

be tried. Although the requirement of serious impairment of body function lacks specificity, uniformity in its application is to some extent attainable through statutory construction by the appellate courts. Unlike traditional tort litigation where differing views among differing juries are generally acceptable, the question whether tort immunity attaches is not a question which we believe the Legislature intended to leave as primarily a question for the trier of fact.

The responsibility of effectuating the legislative will is primarily a matter of law for the court and not properly left to determination by a jury. *Cf. Rusinek v Schultz, Snyder & Steele Lumber Co,* 411 Mich 502; 309 NW2d 163 (1981). Therefore, we conclude that the meaning of "serious impairment of body function" is a matter to be determined by statutory construction. We hold that when there is no factual dispute regarding the nature and extent of a plaintiff's injuries, the question of serious impairment of body function shall be decided as a matter of law by the court. Likewise, if there is a factual dispute as to the nature and extent of a plaintiff's injuries, but the dispute is not material to the determination whether plaintiff has suffered a serious impairment of body function, the court shall rule as a matter of law whether the threshold requirement of MCL 500.3135; MSA 24.13135 has been met.

On this appeal, no party has argued that factual disputes material to the determination of serious impairment of body function should be determined without a jury. It is a question not necessary to the resolution of the present cases. Consequently, we do not intend to intimate any view on the issue.

## III

"Serious impairment of body function" obviously

is not susceptible of a simple definition that will determine the outcome in all cases. Absent specifics from the Legislature, its character will of necessity have to develop on a case-by-case basis. As more cases are decided, it should become clearer what types of injuries are of sufficient gravity to meet the threshold. We seek to do no more than provide an interpretation that addresses the significant aspects of the cases presently before us.

In *Hermann v Haney,* we affirm the summary judgment granted below and affirm the judgment of the Court of Appeals, because we conclude that Mrs. Hermann's injuries were not sufficiently serious to satisfy the threshold requirement. The extent of her injuries was undisputed. The bruises she suffered, which were not troublesome to her, cleared up in two months, and the bump on her head in one month. Although she missed a month of work because of back and neck pains, these pains had diminished after that month, and presented no problems after two months. Wage loss was compensated under no-fault economic provisions.

In determining the seriousness of the injury required for a "serious impairment of body function", this threshold should be considered in conjunction with the other threshold requirements for a tort action for noneconomic loss, namely, death and permanent serious disfigurement. MCL 500.3135; MSA 24.13135. The Legislature clearly did not intend to erect two significant obstacles to a tort action for noneconomic loss and one quite insignificant obstacle. Although one might also

question whether she suffered any "impairment of body function", regardless of the question of seriousness, we do not rest our affirmance on that ground. Her doctor's deposition was not taken, and the question of seriousness is dispositive.

In *Cassidy v McGovern,* the testimony was undisputed that plaintiff suffered a serious impairment of body function. The testimony at trial was undisputed that plaintiff suffered complete breaks of both bones in his lower right leg. He was hospitalized for 18 days and wore four casts for the next seven months. During this time dizzy spells often prevented the use of crutches, and he was forced to use a walker. Although he complained that the leg was still bothering him more than one and one-half years after the accident, his doctor testified that the fractures had healed well and that there was no significant residual damage. Some further consideration of the meaning of serious impairment of body function is necessary to resolve this case.

The language "impairment of body function" is ambiguous regarding whether the impairment must be of *any* body function or of the *entire* body function. On the one hand, if *any* body function were to be considered the intended meaning, arguably a serious impairment of the use of the little finger would meet the threshold requirement. On the other hand, if an impairment had to be of the entire body function, then arguably only life-threatening injuries would satisfy the requirement. We believe that neither of these options accurately reflect the legislative intent and that impairment of body function is better understood as referring to important body functions.

Walking is an important body function that for Leo Cassidy was impaired by his broken bones. This conclusion is not affected one way or another by the fact that Leo Cassidy is a potato farmer who must be on his feet for long hours. We believe that the Legislature intended an objective standard that looks to the effect of an injury on the person's general ability to live a normal life. Walking is an important body function, the serious impairment of which constitutes the "serious impairment of body function".

Another significant aspect of the phrase "serious impairment of body function" is that it demonstrates the legislative intent to predicate recovery for noneconomic loss on objectively manifested injuries. Recovery for pain and suffering is not predicated on serious pain and suffering, but on injuries that affect the functioning of the body. Leo Cassidy's injuries were not general aches and pains, but rather two broken bones. Thus, his injuries fall within the classification "impairment of body function".

The more difficult question is whether his injuries were sufficiently serious. In considering whether plaintiff's motion for a directed verdict was improperly denied, we must view the evidence in a light most favorable to the defendant.

We hold that his two broken bones, 18 days of hospitalization, 7 months of wearing casts during which dizzy spells further affected his mobility, and at least a minor residual effect one and one-half years later are sufficiently serious to meet the threshold requirement of serious impairment of body function. In so holding, we conclude that an injury need not be permanent to be serious. Per-

manency is, nevertheless, relevant. (Two injuries identical except that one is permanent do differ in seriousness.)

In *Hermann,* we affirm.

In *Cassidy,* we reverse and remand for trial.

FITZGERALD, C.J., and WILLIAMS, LEVIN, and RYAN, JJ., concurred with COLEMAN, J.

KAVANAGH, J. *(concurring in part and dissenting in part).* These cases concern the meaning of the phrase "serious impairment of body function", MCL 500.3135(1); MSA 24.13135(1), which is one of the bridges between the statutory scheme of no-fault insurance, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.,* and traditional tort recovery in motor vehicle accidents. We granted leave to appeal and consolidated *Cassidy v McGovern,* 410 Mich 861 (1981), and *Hermann v Haney,* 410 Mich 921 (1981).

In each case, it must be determined whether certain injuries suffered by a plaintiff cross the statutory threshold for recovery of noneconomic losses in tort. The Legislature, in adopting no-fault insurance, decided that traditional tort recovery remains available if the injuries are severe enough.

In *Cassidy,* plaintiffs sought recovery in tort for injuries suffered when plaintiff Leo Cassidy's car collided with one driven by defendant Terrance McGovern, owned by defendant Peter H. Seaton, and operated in the course of employment with defendant Seaton Industries, Inc. Plaintiff Ardith Cassidy claimed loss of consortium. At trial, defendants admitted liability, but disputed whether Leo Cassidy's injuries met the threshold of § 3135(1) to

enable recovery in tort. As a result of the accident, Leo Cassidy, a potato farmer, suffered complete fractures of both bones of his lower right leg.

At the close of their case in chief, plaintiffs moved for a directed verdict on the issue whether Leo Cassidy had suffered a serious impairment of body function. In denying the motion, the trial court indicated that it was without authority to do anything but submit the question to the jury. The jury returned a verdict in the defendants' favor. On appeal, the Court of Appeals ruled that the trial court did have authority to decide the motion for directed verdict and remanded for that purpose. *Cassidy v McGovern,* 86 Mich App 321; 272 NW2d 644 (1978). On remand, the trial court ruled plaintiff Leo Cassidy's injuries did not constitute serious impairment of body function as a matter of law and that the issue was properly given to the jury to decide. On a second appeal, the Court of Appeals affirmed. *Cassidy v McGovern,* 98 Mich App 100; 296 NW2d 200 (1980).

Plaintiffs in *Hermann* brought an action for recovery in tort claiming that plaintiff Barbara Jean Hermann suffered serious impairment of body function. Plaintiff Michael Hermann sought damages for loss of consortium. Barbara Jean Hermann, a telephone operator, suffered bruises on her legs and knees, a bump on her head, and neck and back injuries in an automobile accident. Defendants moved for summary judgment, arguing that she, as a matter of law, had not suffered serious impairment of body function. The trial court granted defendants' motions and later denied plaintiffs' motion for rehearing. In a split decision, the Court of Appeals affirmed. *Hermann v Haney,* 98 Mich App 445; 296 NW2d 278 (1980).

Under the statute at issue:

"A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, *serious impairment of body function,* or permanent serious disfigurement." MCL 500.3135(1); MSA 24.13135(1) (emphasis added).

Of the three categories in the statute, perhaps the least definite is the one which is implicated in these cases. Whether particular injuries constitute serious impairment of body function is a question to be determined in the context of the no-fault act. The Legislature provided no guideline for construing the serious impairment phrase.

The plaintiffs in *Cassidy* argue that complete fractures of both lower bones of one leg constitute serious impairment of body function as a matter of law, especially where qualitative inferences must be made. They say that if the threshold is to be malleable and applicable to a variety of circumstances, the language of the statute must be given full latitude. Defendants warn against adopting any schedule of injuries as sufficient to meet the threshold.

In *Hermann,* plaintiffs argue that a genuine issue of material fact existed sufficient to preclude an order of summary judgment in defendants' favor. The jury should decide the issue, plaintiffs say, except where interpretation breaches or approaches permissible limits. Defendants maintain, on the other hand, that Barbara Jean Hermann's injuries are textbook examples of the kind which no-fault meant to exclude because her initial injuries were not severe, nor were the effects continuing. Any determination, they urge, must consider the legislative intent of reducing the number of lawsuits in confining personal injury claims to the no-fault system.

We reverse the judgments in both cases and hold that, in *Cassidy,* complete fractures of both lower bones of one leg constitute serious impairment of body function as a matter of law. Barbara Jean Hermann's injuries presented a question for the trier of fact to determine.

"Serious impairment of body function" is a standard not readily amenable to judicial definition, but is nevertheless sufficiently definite for interpretation and acquires meaning from case-by-case application. *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441; 208 NW2d 469 (1973). The words of the statute, standing alone, are not self-evident in meaning and must be construed in reference to the goals of the no-fault act and the rules of statutory construction.

The act must be read as a whole and construed in light of its objectives. Statutory language of doubtful meaning is given a reasonable construction by looking at the purpose to be served. *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184, 190; 253 NW2d 646 (1977), *reh den* 400 Mich 1029 (1977). In seeking meaning, the words and clauses are not divorced from those which precede and those which follow. *Sanchick v State Board of Optometry,* 342 Mich 555, 559; 70 NW2d 757 (1955).

The statutory scheme of no-fault insurance resulted from dissatisfaction with traditional theories of liability founded on fault. Among the deficiencies sought to be remedied were the overcompensation of minor injuries, the undercompensation of serious injuries, long payment delays, an overburdened court system, and discrimination against those with low income and little education. *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978), *reh den* 403 Mich 958 (1978), *cert*

*den sub nom Allstate Ins Co v Kelley,* 442 US 934; 99 S Ct 2869; 61 L Ed 2d 303 (1979). To remedy these deficiencies, liability without fault was provided to replace traditional tort recovery except where injuries met one of the thresholds of § 3135(1).

An injury need not be permanent or fatal to seriously impair body function, nor must it disfigure the injured person. Death, permanency, and disfigurement are not at issue where serious impairment of body function is asserted.

Statutes such as the no-fault act, which derogate from the common law, must be strictly construed. They will not be extended by implication to abrogate established rules of common law. *Rusinek v Schultz, Snyder & Steele Lumber Co,* 411 Mich 502, 508; 309 NW2d 163 (1981), *reh den* 412 Mich 1101 (1981). Because the Legislature chose a rather amorphous standard, we are not free to treat it as being limited only to the most serious injuries. We may not properly extend the Legislature's endeavor to resolve the tort system's deficiencies by limiting the available causes of action.

The question whether the threshold has been met may be decided as a matter of law where reasonable persons would not reach different conclusions on the seriousness of an injury. *Harris v McVickers,* 88 Mich App 508, 510-511; 276 NW2d 629 (1979), *lv den* 406 Mich 929 (1979). Otherwise, a question is presented for the trier of fact. *Advisory Opinion, supra,* 478.

We are satisfied, in light of the spirit and purpose of the no-fault act, that complete fractures of both bones of the lower right leg constitute a serious impairment of body function as a matter of law.

Thus, in *Cassidy,* the trial court erred in failing to direct a verdict in plaintiffs' favor on the issue

whether Leo Cassidy suffered a serious impairment of body function. See *Armstrong v LeBlanc,* 395 Mich 526, 532; 236 NW2d 419 (1975). We are persuaded that the complete fractures of Leo Cassidy's weight-bearing bones significantly interfered with his ability to walk. He was hospitalized for 18 days. His leg was unable to bear any weight for over two months. Up to nine months after the accident, Leo Cassidy used first crutches and later a walker to move about. Testimony was adduced about his complaints of a limp. The threshold question should never have been submitted to the jury. A new trial is required.

In the *Hermann* case, on the other hand, we are not prepared to say that all reasonable persons would agree that Barbara Jean Hermann's injuries constituted a serious impairment of body function. She suffered bruises on her legs and knees and a bump on her head. She was given medication at a hospital after the accident and was discharged. About two days later, she complained of neck and back pains which caused difficulty in sitting for an extended period of time. A doctor treated her neck and back on nine occasions. She did not return to work for one month following the accident, and during that time she was confined mainly to bed. Her neck and back problems cleared up about one month after returning to work, about two months after the accident. Reasonable minds might differ over whether these injuries constituted a serious impairment of body function.

Thus, in *Hermann,* it was error to grant defendants' motions for summary judgment. The threshold issue should have been given to the jury to decide. We reverse for trial.

RILEY, J., took no part in the decision of this case.