## Becker v. Harple

*Michael J. Hohenadel,* for plaintiff.
*Thomas R. Miller,* for defendant.

ALLISON, *J.,* September 3, 1993—This matter is before the court on defendant's motion for partial summary judgment. As a result of a rear-end automobile accident on October 7, 1991, Sharon D. Becker commenced a lawsuit against Cheryl Lynn Harple on February 25, 1992. Pursuant to an election made by Ms. Becker with her insurance carrier, Fidelity & Guaranty Company, she elected the limited tort option pursuant to 75 Pa.C.S. §1705.

On February 7, 1990, the Pennsylvania General Assembly passed an amendment to the Pennsylvania Motor Vehicle Responsibility Law, the Act, establishing the "limited tort option:" 75 Pa.C.S. §1701 et seq., §1705(d). The limited tort option provides that in exchange for a lower premium rate, an insured may waive his right to bring suit for "noneconomic" loss incurred as a result of a motor vehicle accident. "Noneconomic" loss is defined in section 1702 of the Act as pain and suffering

and other noneconomic detriment. In other words, the innocent victim of a motor vehicle accident who elects the limited tort option, can maintain an action for lost wages and medical expenses, but waives his or her right to sue for pain and suffering.

The Act provides for certain exceptions to this general rule. Insureds who elect the limited tort option may, nevertheless, bring suit for noneconomic damages under the following limited circumstances: (1) the person at fault is convicted of driving under the influence of alcohol or a controlled substance; (2) the person at fault is operating a vehicle registered outside of Pennsylvania; (3) the accident is caused by the tortfeasor's intentional conduct; (4) the tortfeasor has no "financial responsibility" as defined in the Act; (5) the accident is caused by a vehicle design or manufacturing defect; and (6) the victim is an occupant of a motor vehicle that is not a "private passenger motor vehicle" under the Act. 75 Pa.C.S. §1705(d).

There is an additional exception which allows recovery for "serious injury." The election of the limited tort option does not bar an insured for maintaining an action for noneconomic loss if he or she can prove he or she has suffered a "serious injury." 75 Pa.C.S. §1705(d). "Serious injury" is defined in section 1702 of the Act as:

"A personal injury resulting in death, serious impairment of a body function or permanent serious disfigurement."

This language is, obviously, ambiguous and to date no courts of law in Pennsylvania have defined "serious impairment of a bodily function" and/or "permanent serious disfigurement."

By legislative design, the language of the Pennsylvania Limited Tort amendment relating to the definition

of "serious injury" was copied verbatim from the Michigan No-Fault Insurance Act Mich. Comp. Laws §500 .3135 (1973). Because the Michigan Act is nearly 20 years old, a substantial number of Michigan courts have had the opportunity to apply the definition of "serious injury" to specific fact situations arising under the Michigan statute.

Prior to 1986, the Michigan courts decided many such cases on motions for summary judgment. In *Cassidy v. McGovern,* 330 N.W.2d 22 (Mich. 1982), the Michigan Supreme Court ruled that as long as there was no controversy regarding the extent of plaintiff's injuries, the question of whether an injury constituted a "serious impairment of body function" was one of statutory construction to be decided by the courts.

In *Cassidy,* the Michigan Supreme Court defined "impairment of body function" as an impairment that would interfere with the plaintiff's ability to live a normal life. In that case, plaintiff, Leo Cassidy suffered two complete breaks of both bones in his lower right leg. The court noted that Cassidy was a potato farmer who was required to stand for long hours and that walking was certainly an important body function. Cassidy was hospitalized for 18 days and wore casts for the next seven months. He also suffered dizzy spells. The treating physicians testified that the fractures had healed and there was no significant residual damage. Even though the damage was not permanent, the court held that Cassidy's injuries did constitute a "serious impairment of a body function."

However, in *Hermann v. Haney,* 330 N.W.2d 22 (Mich. 1982), the companion case to *Cassidy,* the Michigan Supreme Court decided that the plaintiff's injuries did not constitute a "serious impairment of body function." In that case, plaintiff had suffered only some

undefined neck and back injury, was absent for work only for a month after the accident, and then returned without restrictions on her activities.

The Michigan court enunciated some guidelines for defining serious injury in these cases. As mentioned above, the term "serious impairment of a body function" was defined to mean an impairment that would interfere with the plaintiff's ability to live a normal life. The court specifically rejected a construction that the impairment could be of *any* body function, such as the movement of a person's little finger. It also rejected a definition that would require the impairment to be a *total* body function. Rather, under *Cassidy,* the impairment need only be of an *important* body function, such as walking. And while the injury need not be of a permanent nature, the court made it clear in *Hermann* that a disability lasting only a month or so was not a serious injury. Therefore, longevity of the impairment would appear to be a significant factor to be considered under this pair of Michigan cases.

In addition, the Michigan courts require objective scientific or medical manifestation of the injury. Leo Cassidy's broken bones were factually supported by x-rays, while Barbara Jean Hermann's soft tissue injuries could not be objectively documented. Moreover, pain and suffering has been determined not to be an objective manifestation of a serious injury. See *e.g., Denson v. Garrison,* 378 N.W.2d 532 (Mich.App. 1985); *Franz v. Woods,* 377 N.W.2d 373 (Mich.App. 1985) (muscle spasms not an objective manifestation of a "serious impairment of body function"). The effect of this requirement of "objective manifestation" has been that in the majority of cases involving soft tissue injury prior to 1986, the Michigan courts decided on motions

for summary judgment that noneconomic damages were not recoverable as a matter of law.[1]

The more recent Michigan case law evolves from the 1986 state Supreme Court decision in *DiFranco v. Pickard,* 398 N.W.2d 896 (Mich. 1986). The *DiFranco* court held that the question of what constitutes a "serious injury" is solely a question for the trier of fact (usually a jury) when reasonable minds can differ as to whether the injury satisfies the threshold. Contrary to the court in *Cassidy,* the *DiFranco* court based its holding on its express finding that the purpose of the Michigan No-Fault Act is to reduce the number of cases seeking economic damages (medical expenses, wage loss, etc.), and that limiting tort liability for noneconomic losses is *not* an essential feature of the No-Fault Act. *Id.* at 908. Accordingly, *DiFranco* effectively overruled *Cassidy.*

*DiFranco* narrowed the "ability to live a normal life" test espoused by the court in *Cassidy* by finding that the test could be satisfied if the injury to a single body function was serious enough to impair that function. *Id.* at 901. The court enunciated several factors to be considered, including the extent of the impairment, the length of time it lasted, the treatment to correct the impairment and any other relevant factors. Importantly, the *DiFranco* court held that an impairment need not be permanent to be serious. *Id.* In addition, by modifying the "objective manifestation test" so that any medically identifiable injury satisfies this part of the threshold, the *DiFranco* court overruled the *Cassidy* court's holding that the injury must be subject to medical meas-

---

1. It is worth noting that in *Cassidy,* the Michigan Supreme Court stated that a reason the Michigan legislature limited recovery for noneconomic loss was because of the excessive litigation of motor vehicle accident cases. *Cassidy,* 330 N.W.2d at 28.

urement. The practical effect of *DiFranco* in Michigan, has been that fewer cases have been decided on motions for summary judgment and the court of appeals has been required on fewer occasions to decide what constitutes a "serious injury."

In the present case, the basis for plaintiff's claim for noneconomic damages is that she sustained a serious impairment of bodily function. Plaintiff's deposition testimony and the opinions of the treating and examining physicians revealed that her injuries consisted of strain and sprain of her cervical and thoracic spine and a fractured elbow. The effect of the injuries on plaintiff's daily activities is evidenced by her deposition testimony. Plaintiff related at the time of the accident she was working two jobs as a waitress. She quit one of those jobs due to her inability to lift the trays of food with her broken elbow.

The court believes that reasonable minds can differ concerning the seriousness of plaintiff's injuries.

Based on the test set forth in the *DiFranco* case cited above, the court believes that the question as to whether the plaintiff has suffered a personal injury resulting in serious impairment of a body function and/or a permanent serious disfigurement is a question for the trier of fact and that the question of whether the plaintiff should be able to recover under the exceptions to the limited tort option should be decided by the jury.

In accordance with the foregoing, the following order is entered:

## ORDER

And now, September 3, 1993, the defendant's motion for partial summary judgment is denied.