# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 24, 2011

138260(36)

DANIEL WIEDYK,
      Plaintiff-Appellant,

v

JOHN PAUL POISSON and TRAVERSE
CITY LEASING, d/b/a HERTZ,
      Defendants-Appellees.
_____/

Robert P. Young, Jr.,
*Chief Justice*

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
*Justices*

SC: 138260
COA: 280214
Midland CC: 06-009751-NI

On order of the Court, the motion for reconsideration of this Court's December 1, 2010 order is considered, and it is DENIED, because it does not appear that the order was entered erroneously.

YOUNG, C.J. (*concurring*).

We have reached the point again where the Legislature must speak if it wishes to preserve the no-fault act's compromise between the provision of quick, generous insurance benefits without proof of fault and the act's restrictions on access to additional tort recovery. No one actually attempts to justify having both the most generous automobile insurance benefits in the nation *and* a tort system where virtually any auto injury would satisfy the noneconomic damages exception to no-fault. Yet, while *Kreiner v Fischer*[1] preserved that distinction, *McCormick v Carrier*[2] ignored and eliminated it.

Even though I joined and continue to subscribe to Justice MARKMAN's dissenting opinion in *McCormick*, I concur in this Court's decision to deny defendant's motion for reconsideration from our order remanding this case in light of *McCormick*, wherein defendant asks this Court to reconsider whether *McCormick* was correctly decided. I write to emphasize Justice MARKMAN's concerns that "[b]y nullifying the legislative compromise, which was grounded in concerns over excessive litigation, the

[1] 471 Mich 109 (2004).

[2] 487 Mich 180 (2010).

overcompensation of minor injuries, and the availability of affordable insurance, the Court's decision [in *McCormick*] will resurrect a legal environment in which each of these hazards reappear and threaten the continued fiscal integrity of our no-fault system."[3]  As I noted in my original concurrence to the remand in this case, the factual scenario presented here brings to life these concerns.[4]

The reappearance of these hazards that threaten the viability of Michigan's no-fault system does not represent a new development.  In *Kreiner v Fischer*, we thoroughly traced the development of this Court's caselaw interpreting MCL 500.3135's provisions governing when a no-fault plaintiff may recover noneconomic damages.[5]  From this rocky history, two trends emerge and are noteworthy in consideration of this case.  First, this Court's interpretation of the threshold standard for noneconomic recovery, MCL 500.3135, has not been consistent for more than a thirty-year span.  Even more troubling, the changed interpretations articulated in *DiFranco v Pickard*[6] and *McCormick* represented a significant departure *away* from the interpretation that enforced the Legislature's strict requirements.  Second, in response to these changing interpretations, the Legislature has found it necessary to amend the language used in this statute as the means of compelling Michigan courts to enforce its stated intent limiting noneconomic recovery.[7]

---

[3] *McCormick*, 487 Mich at 227 (MARKMAN, J., dissenting).

[4] See *Wiedyk v Poisson*, ___ Mich ___ (2010) (YOUNG, J., concurring).

[5] *Kreiner*, 471 Mich at 114-122; see also *McCormick*, 487 Mich at 233-259 (MARKMAN, J., dissenting).

[6] 427 Mich 32 (1987).

[7] In 1995, the Legislature enacted a bill that amended MCL 500.3135.  The purpose of this bill was to "modify tort liability arising out of certain accidents."  The necessity of this bill arose only because this Court's decision in *DiFranco v Pickard*, 427 Mich 32 (1986), discarded the then-controlling standard implementing the Legislature's limitations on recovery.  The *DiFranco* majority overruled *Cassidy v McGovern*, 415 Mich 483 (1982), which was still cooling on the presses.  The Legislature's 1995 amendments reinstituted *Cassidy* nearly in its entirety as the governing standard.  As the *McCormick* dissent astutely noted, the *McCormick* majority reinstituted what essentially amounted to the *DiFranco* test, notwithstanding the fact that the Legislature made clear that *DiFranco* did *not* reflect the policy of this State.  See *McCormick*, 487 Mich at 239-240 (MARKMAN, J., dissenting).

It is a particularly unfortunate development when the Legislature must act to countermand a decision of the Supreme Court where this Court refused to enforce the unambiguous language used in the no-fault statute after a *prior* corrective legislative amendment. The deconstruction of the Legislature's work product that took place in *McCormick* is strikingly similar to the deconstruction *DiFranco* achieved in the past that also necessitated a legislative correction. Demonstrating that history truly does repeat itself, I find it difficult to improve on what this Court stated nearly 30 years ago: "If every case is subject to the potential of litigation on the question of noneconomic loss, for which recovery is still predicated on negligence, perhaps little has been gained by granting benefits for economic loss without regard to fault."[8]

*Kreiner* provided an accurate construction that appropriately enforced the clear language of MCL 500.3135. Equally as important, *Kreiner* recognized that these provisions affect every Michigan driver due to the mandatory nature of no-fault automobile insurance. Thus, this Court's duty to apply consistently the Legislature's policy choices takes on particular importance because of the direct impact that the Court's decisions have on such a substantial number of Michigan's citizens. *McCormick* has now undone much of this, and as a result produced a regime of seemingly unlimited liability that will require courts to wrestle with the question of what constitutes a "serious impairment of body function."[9] Accordingly, courts may now find compensable in tort as a matter of law routine injuries not intended by MCL 500.3135 to be compensated beyond the full panoply of benefits otherwise conferred by the no-fault act.

I encourage the Legislature to judge for itself whether the current interpretation provided in *McCormick* for what constitutes a "serious impairment of body function" is truly the interpretation it originally contemplated. Should the Legislature determine that *McCormick* undermines the "grand compromise" of Michigan's unique no-fault act, as I believe it does, that body may find it necessary to correct this Court's *McCormick* construction that, in my opinion, fails to give meaning to the Legislature's policy choices.

CAVANAGH, J. (*concurring*).

---

[8] *Cassidy v McGovern*, 415 Mich 483, 500 (1982).

[9] It is impossible to conceive that, when the Legislature chose the language "death, serious impairment of body function, or permanent serious disfigurement" as the threshold standard for noneconomic recovery, a majority of this Court would hold, as a matter of law, that an impairment of a body function that merely "*influences some* of the plaintiff's capacity to live in his or her normal manner of living" meets the statutory threshold. See *McCormick*, 487 Mich at 215 (emphasis added). In *McCormick*, plaintiff broke his ankle.

I concur in the order denying defendants' motion for reconsideration. I write only to respond to Chief Justice YOUNG's concurrence, in which he attacks this Court's recent opinion in *McCormick v Carrier*, 487 Mich 180 (2010).

Impassioned hyperbole aside, an unbiased reading of *McCormick* aptly illustrates that *McCormick* did not resuscitate *DiFranco v Pickard*, 427 Mich 32 (1986), nor did it turn a blind eye to the will of the Legislature.[10] Indeed, *McCormick*'s analysis faithfully applied the clear and unambiguous language of MCL 500.3135. As evidenced by *McCormick*'s analysis, *McCormick* fully recognized the Legislature's adoption of *Cassidy v McGovern*, 415 Mich 483 (1982), where the Legislature indicated an intent to do so through the statute's text and, similarly, "reinstituted" *DiFranco* only where the statute's text actually indicated a legislative intent to do so. *McCormick*, 487 Mich at 220. See, also, *id.* at 191, 197-198, 199, 203, 221-222. Thus, as plainly evidenced by *McCormick*'s scrupulous statutory interpretation, *McCormick* applied the text of the statute, even where it conflicted with the principles announced by the *DiFranco* majority. I enthusiastically invite readers and the Legislature to review the full text of *McCormick* to determine the accuracy of Chief Justice YOUNG's claim that *McCormick* essentially represents a mere reinstatement of *DiFranco*.

Not surprisingly, the Chief Justice hypothesizes that *McCormick* will disrupt the Legislature's policy choices and lead us to a parade of horribles. I do not disagree that the no-fault system was designed to remedy certain problems associated with the traditional tort system in the context of automobile accidents. *McCormick*, 487 Mich at 189-190. Nevertheless, the no-fault act *permits* injured persons to potentially recover noneconomic losses in tort when certain statutory requirements are met. And, as I stated before, because *McCormick* is, in my opinion, truer to MCL 500.3135's actual text, *McCormick* more accurately reflects the Legislature's policy considerations than that of *McCormick*'s predecessors. *McCormick*, 487 Mich at 214 & n 26.

*McCormick* simply acted to align this Court's interpretation of MCL 500.3135 with the statute's text and, as a result, did not eliminate the statute's threshold standard

---

[10] The other concurring statements in this case are mainly mere repetitions of arguments presented in *McCormick*, which were thoroughly considered and rejected by the *McCormick* majority. 487 Mich at 219-222. As I explained in *McCormick*, the *McCormick* dissent provided little substantive disagreement or criticisms of *McCormick*'s statutory interpretation and, where the dissent actually addressed *McCormick*'s substantive analysis, its criticisms were often based on misunderstandings or overgeneralizations of the opinion's holdings. *Id.* at 219-220. Today, the concurrences' rehashing of their mistaken characterizations of *McCormick* amount to nothing more than yet another attempt to distract courts, parties, and now the Legislature, from *McCormick*'s interpretation of MCL 500.3135's actual text. *Id*. at 222.

for noneconomic recovery. Indeed, at least according to the *McCormick* dissent, the main dispute between the majority and the dissent was whether *Kreiner*'s temporal requirement was rendered wholly irrelevant by *McCormick*, but that is clearly not the case. Cf. *McCormick*, 487 Mich at 220 n 36; *id.* at 254 (MARKMAN, J., dissenting). *McCormick* simply recognized that the statute does not expressly contain a specific temporal or permanency *requirement*. Thus, as explained in *McCormick*, there is simply no basis to conclude that temporal considerations are irrelevant or that a momentary impairment is sufficient under *McCormick*'s interpretation of MCL 500.3135. *Id.* at 222.[11] Accordingly, just as the no-fault system did not cease before *Kreiner*, I doubt that it will do so in light of *McCormick.*

MARILYN KELLY, J., joins the statement of CAVANAGH, J.

MARKMAN, J. (*concurring*).

I concur in the Court's order because remanding a case to the trial court for reconsideration in light of new caselaw is typically the preferred course of action where the trial court has issued a decision in accordance with caselaw that was applicable at the time of the decision, but is no longer applicable. However, I write separately to respond to the Chief Justice's statement in which he asserts that "we have reached the point again where the Legislature must speak if it wishes to preserve the no-fault act's compromise . . . ."

First, I believe it is premature to decide whether this Court should or should not preserve this compromise by reconsidering existing caselaw, in this instance *McCormick v Carrier,* 487 Mich 180 (2010). Neither the trial court nor the Court of Appeals has had an opportunity in this case to apply *McCormick*. The lower courts have only determined that plaintiff cannot satisfy the "serious impairment" standard of *Kreiner v Fischer,* 471 Mich 109 (2004). If, on remand, the lower courts determine that plaintiff also cannot satisfy the "serious impairment" standard of *McCormick,* then there will be no need at that juncture to reconsider *McCormick*. I would wait until this Court is confronted with a case in which *Kreiner* and *McCormick* compel different outcomes before concluding that

---

[11] After a plain reading of *McCormick*, it is clear that the Chief Justice's efforts to minimize the *McCormick* plaintiff's injuries require some shading of the facts. And, to the extent that the Chief Justice implies that a "broken ankle" is not a sufficiently serious injury to meet the statutory threshold, I would simply note that the threshold inquiry requires focusing on, among other things, how much the impairment affects the person's ability to lead *his or her* normal life, which requires a subjective, person- and fact-specific inquiry. *McCormick*, 487 Mich at 202. And the statute simply "requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed." *Id*. (emphasis in original).

this Court is no longer prepared to interpret what the Legislature meant by its "serious impairment" standard until the Legislature has "spoken" again.

Second, where this Court has been confronted with the question whether to reconsider a precedent, it has been our past practice to address this question by assessing the factors set forth in *Robinson v Detroit,* 462 Mich 439 (2000). I would determine whether *McCormick* should be reconsidered only after the *Robinson* factors have been fully evaluated.

Finally, given the Chief Justice's accurate summation of the history of the "serious impairment" standard, it is not clear what is to be achieved by imposing upon the Legislature the obligation to again "speak" its intentions concerning our no-fault laws. As the Chief Justice himself recognizes, the Legislature has already done this repeatedly, and, just as repeatedly, has been reversed by this Court. The Legislature has twice effected compromises, and twice had these compromises reversed by this Court. *McCormick*; *DiFranco v Pickard*, 427 Mich 32 (1986). How many times does the Legislature have to say "we told you we mean a *serious* impairment" before this Court is prepared to interpret a *serious* impairment as requiring a *serious* impairment? Why is it now the Legislature's "turn" to "speak," rather than that of the judiciary, which is charged with saying what the laws of the Legislature mean? Why exactly does the Legislature have to act more than once, or twice, before this Court is prepared to follow its direction? Legislative compromises are often very difficult things to achieve in a large and diverse representative body, and it should not be underestimated just how difficult it is for the Legislature to reenact at will the kind of comprehensive legal reform that it would now have to re-re-enact, before this Court is prepared to exercise its traditional "judicial power." These are questions that should be seriously reflected upon by this Court, but only if, and when, this case returns to this Court following our remand.

As the dissenting justices observed in *McCormick*:

> [T]he majority's decision will almost certainly call into question the long-term economic integrity of the present no-fault system in Michigan. By nullifying the legislative compromise that was struck when the no-fault act was adopted—a compromise grounded in concerns over excessive litigation, the over-compensation of minor injuries, and the availability of affordable insurance—the Court's decision today will restore a legal environment in which each of these hazards reappear and threaten the continued fiscal soundness of our no-fault system. [487 Mich at 286-287.]

Because I continue to believe that *McCormick* constitutes a flawed interpretation of the law, and because *McCormick* reverses a compromise of the Legislature seeking to balance reasonable and expedited insurance benefits with reduced tort litigation and reasonable insurance premiums, I would wait until the issues in this case are properly

before this Court, before we consider apprising the Legislature that this Court will no longer exercise its traditional judicial authority to "say what the law is" in the context of one of the most far-reaching and consequential of our state's statutes.

I am fully cognizant of the risks of "teeter-totter" justice implicated by this case, and abhor this, but this Court must seriously reflect upon whether such "teeter-tottering" is always to stop in a position that preserves decisions of this Court that are the most resistant to the repeatedly expressed will of the Legislature.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 24, 2011

_____
Clerk

d0621