PULLEN v WARRICK

Docket No. 77522. Submitted January 24, 1985, at Detroit.—Decided July 16, 1985.

Plaintiff, Kimberly Pullen, was injured in an automobile accident. She brought an action in the Wayne Circuit Court against defendant, Julio O. Warrick, the driver of the car in which she was a passenger. Plaintiff alleged various injuries to her head, back, neck, arms, legs, serious impairment of body function and permanent disfigurement, including, but not limited to, marked psychogenic residuals of the anxiety neurosis and concern with internal bleeding. Defendant brought a motion for summary judgment claiming that the injuries alleged by plaintiff did not, as a matter of law, constitute a serious impairment of bodily function. Defendant supported his motion with plaintiff's deposition and answers to interrogatories and with several medical reports. Defendant's motion for summary judgment was granted. Plaintiff's motion for reconsideration was thereafter denied, Joseph B. Sullivan, J. Plaintiff appeals. *Held:*

1. The trial court correctly considered defendant's motion for summary judgment. Defendant did not have to accompany his motion with affidavits based upon personal knowledge since he conceded for purposes of the motion that there was no genuine issue of material fact as to the nature and extent of plaintiff's injuries and relied upon plaintiff's answers to interrogatories, deposition testimony and exhibits.

2. The trial court correctly concluded as a matter of law that plaintiff had not suffered serious impairment of a body function.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Summary Judgment § 12 *et seq.*

Right to voluntary dismissal of civil action as affected by opponent's motion for summary judgment, judgment on the pleadings, or directed verdict. 36 ALR3d 1113.

[2-4] Am Jur 2d, Automobile Insurance § 340 *et seq.*

What constitutes sufficiently serious personal injury, disability, impairment, or the like to justify recovery of damages outside of no-fault automobile insurance coverage. 33 ALR4th 767.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

J. T. KALLMAN, J., dissented. He would find that the plaintiff
has an objectively manifested injury which reasonable persons
could conclude has seriously impaired an important body func-
tion. He would reverse the summary judgment and remand for
trial.

## OPINION OF THE COURT

1. JUDGMENTS — SUMMARY JUDGMENT — MOTIONS — AFFIDAVITS —
   COURT RULES.

   Affidavits based upon the defendant's personal knowledge are
   unnecessary to support a motion for summary judgment on the
   ground that there is no genuine issue as to any material fact in
   a tort action for noneconomic loss resulting from an automobile
   accident where the defendant concedes for purposes of the
   motion that there is no genuine issue of material fact as to the
   nature and extent of plaintiff's injuries and the defendant
   relies upon plaintiff's answers to interrogatories and deposition
   testimony as well as exhibits to support the motion; the defen-
   dant may be excused from presenting specific evidential facts
   concerning the nature of the plaintiff's injury and treatment
   where such facts are within the personal knowledge of only the
   plaintiff and his physician (GCR 1963, 117.2[3], 117.3).

2. INSURANCE — NO-FAULT INSURANCE — TORT LIABILITY — SERIOUS
   IMPAIRMENT OF BODY FUNCTION.

   Whether an injury is a serious impairment of body function
   under the no-fault act so as to give rise to tort liability for
   noneconomic loss is a matter to be determined by statutory
   construction; courts are to decide this threshold question as a
   matter of law where there is no material factual dispute as to
   the nature and extent of the plaintiff's injuries (MCL 500.3135;
   MSA 24.13135).

3. INSURANCE — NO-FAULT INSURANCE — TORT LIABILITY — SERIOUS
   IMPAIRMENT OF BODY FUNCTION.

   A plaintiff seeking to show a serious impairment of body function
   under the no-fault act must show that the impaired body
   function is an important one which affects the plaintiff's gen-
   eral ability to live a normal life; the permanency of the injury
   is a relevant factor but a permanent injury is not required;
   objective manifestation of the injury is required because recov-
   ery for pain and suffering is not predicated on serious pain and
   suffering, but on injuries that affect the functioning of the body.

Dissent by J. T. Kallman, J.

4. Insurance — No-Fault Insurance — Serious Impairment of
   Body Function.
   A plaintiff may be found to have suffered a serious impairment of
   body function within the terms of the no-fault act where the
   plaintiff has an objectively manifested injury which reasonable
   persons could conclude has seriously impaired an important
   body function (MCL 500.3135; MSA 24.13135).

*Rosenbaum, Bloom, Appel & Moses, P.C.* (by
*Leslie D. Bloom),* for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker,
P.C.* (by *Thomas F. Myers),* for defendant.

Before: Hood, P.J., and Wahls and J. T. Kall-
man,* JJ.

Per Curiam. On July 28, 1980, plaintiff was
injured in a car accident. On April 27, 1982, she
commenced an action against defendant, the
driver of the car in which she was a passenger, for
"injuries to her head, back, neck, arms, legs, a
serious impairment of body function and perma-
nent disfigurement, including, but not limited to,
marked psychogenic residuals of the anxiety neu-
rosis and concern with internal bleeding". On
November 8, 1983, defendant brought a motion for
summary judgment, pursuant to GCR 1963,
117.2(3), on the ground that the "injuries and
damages as alleged by plaintiff do not, as a matter
of law, constitute a serious impairment of a bodily
function". Defendant supported his motion with
plaintiff's deposition and answers to interrogato-
ries and with several medical reports. Plaintiff, in
answer to the motion, alleged that "she is in-
formed and believes that her injuries could be and
probably are permanent; further, that her injuries
impair her motion, her ability to earn a livelihood
or to lead a normal life". Plaintiff supported her

* Circuit judge, sitting on the Court of Appeals by assignment.

position with her own affidavit and the medical reports of her two doctors. Pursuant to its written opinion of February 7, 1984, the court granted defendant's motion by order dated February 16, 1984. Plaintiff's motion for reconsideration, supported by additional statements from her doctors, was denied. Plaintiff appeals as of right.

I

Plaintiff first argues that defendant's motion for summary judgment pursuant to GCR 1963, 117.2(3) was jurisdictionally defective because it was not accompanied by affidavits, as required by subrule 117.3. *Nabkey v Kent Community Action Program, Inc,* 99 Mich App 480; 298 NW2d 11 (1980). Plaintiff would require that defendant, by affidavit, show "that plaintiff could do everything a normal person could do and without material impairment". We disagree. The better view is expressed in *Jakubiec v Kumbier,* 134 Mich App 773, 775-776; 351 NW2d 865 (1984), where this Court concluded that affidavits based on personal knowledge were unnecessary where defendant conceded for purposes of the motion that there was no genuine issue of material fact as to the nature and extent of plaintiff's injuries and defendant relied on plaintiff's answers to interrogatories and deposition testimony as well as exhibits. The rationale for the Court's decision, as stated in *Brooks v Reed,* 93 Mich App 166, 174; 286 NW2d 81 (1979), was that the specific evidential facts concerning the nature of plaintiff's injuries and treatment were within the personal knowledge of only the plaintiff and her physician. Faced with a similar situation in this case, we conclude that the trial court was correct in considering the motion before it.

II

We turn now to the main issue, whether the trial court correctly concluded as a matter of law that plaintiff had not suffered serious impairment of a body function. We begin with a statement of the facts which were before the trial court for consideration.

A

On July 28, 1980, defendant and a friend offered plaintiff, then 16 years old, and Peggy Taylor a ride. The two girls accepted and got in the back seat. On Seven Mile Road, defendant allegedly drove at 70 miles per hour and ignored pleas from his passengers to slow down. Eventually, he struck the rear end of a parked car.

Plaintiff was thrown about awkwardly in the vehicle. She struck her head against that of Peggy Taylor, rendering the latter unconscious. She struck her left ankle hard against some object. Broken glass lacerated her arms and ankles, with the most severe cut on her left ankle.

Defendant assisted plaintiff from the car and the two of them removed Ms. Taylor. The Women's Health Center rendered first aid at the scene. In plaintiff's case, this involved wiping the blood from her feet and putting Mercurochrome on the cuts. EMS arrived and took plaintiff to Mount Carmel Hospital.

At the hospital, plaintiff's feet were further cleaned and then bandaged. She received x-rays of her skull, cervical spine and left ankle. The x-rays were negative and plaintiff was released.

Subsequently, plaintiff experienced swelling in her left ankle as well as stiffness in her neck and back, so she went to her family doctor, Dr. Raymond K. Feldman, D.O., on August 1, 1980. Dr.

Feldman performed a physical examination and began a course of treatment which included heat, ultrasound, massage, muscle relaxants and anti-inflammatory preparations. Also, on August 1, 1980, plaintiff returned to the hospital for further x-rays of her left ankle. Again, the x-rays were negative.

Plaintiff returned to Dr. Feldman for further treatment 10 more times in August, 1980, 5 times in September, 14 times in the next 9 months and, thereafter, 4 times in 2 years. Dr. Feldman's report of January 23, 1982, indicates that plaintiff had come to him with severe soft tissue injuries of the neck, back and left ankle and was considerably improved within a few weeks. A neurological examination indicated results within normal limits. Plaintiff did continue to complain of pain and headaches and her progress was slower than anticipated, probably because of the residuals of anxiety neurosis and concern over the internal complications of her injuries. Dr. Feldman concluded that, due to the residuals, plaintiff's injuries could be classified "within the guidelines of severe impairment of body function".

On August 3, 1981, plaintiff was examined by Dr. Paul J. Forman, D.O., at the request of the Automobile Club of Michigan. Plaintiff complained of pain in the left foot and leg, particularly when walking long distances, and pain in the neck region and headaches across the back of the head. She said that she was receiving treatment three times a week. Plaintiff did not walk with a limp when examined, her gait being normal. The doctor concluded after his examination that no abnormalities were present and plaintiff could deal with minor discomforts at home by using minor analgesics and heat.

In 1981, plaintiff went to school, taking 11th

grade classes for 3 hours 4 nights a week. She was placed by an employment agency in several short-term jobs, the longest being a clerical position with Blue Cross & Blue Shield for about a month. Plaintiff jogged on a number of occasions with friends. She found that, in jogging, her left ankle tended to slip or twist and would then swell. The ankle would also swell when she rode a bicycle. Plaintiff did not jog in 1982 after becoming pregnant. In June, 1982, plaintiff completed her G.E.D. requirements.

Plaintiff was deposed on November 8, 1982. At that time, her complaints were headaches, pain in her lower back after being on her feet for four to five hours and the pain and swelling in her left ankle after jogging, cycling, or walking in certain ways. Somewhat surprising in light of Dr. Feldman's records, plaintiff claimed that she received treatment twice weekly from the time of the accident.

On June 27, 1983, plaintiff went to Joseph S. Salerno, D.P.M. Plaintiff complained of pain in both ankles and of increasing pain from calluses on both feet. She told the doctor that the pain in both ankles dated from the July 28, 1980, accident but had become more severe in the right ankle when she compensated by placing more weight on that ankle, favoring the left ankle which originally was the more severely injured. Dr. Salerno's examination revealed no swelling and normal muscle development. Range of motion in the ankles was acceptable with one exception. Pain was elicited at maximum inversion and eversion of the right ankle. Furthermore, upon forced eversion of the right ankle, the doctor ascertained at one point a sensation which could be both felt and heard. Dr. Salerno concluded that plaintiff's problem was, in clinical terms, "traumatic laxity or ankle instabil-

ity, right". He began a course of treatment, apparently for both the pain and calluses, including strapping, injection therapy, padding and whirlpool therapy. Eventually, he suggested orthopedic molded shoes for stabilization and use of an air cast during periods of prolonged weight bearing, walking or running. On March 6, Dr. Salerno signed an affidavit stating his opinion that the foot conditions for which he had treated plaintiff "could materially impair her ability to walk, run or endure weight bearing and that such condition could be permanent and could become more severe in the future".

## B

The meaning of "serious impairment of body function" is a matter to be determined by statutory construction. Accordingly, where there is no material factual dispute as to the nature and extent of a plaintiff's injuries, the courts are to decide this threshold question as a matter of law. *Cassidy v McGovern,* 415 Mich 483, 502; 330 NW2d 22 (1982). Since, in this case, defendant accepted plaintiff's allegations of injuries, the question of the seriousness of plaintiff's injury was properly to be decided as a matter of law.

Defendant suggests that the right ankle injury does not fall under the ambit of no-fault coverage because it was not temporally or spatially related to the accident, citing *Wheeler v Tucker Freight Lines Co, Inc,* 125 Mich App 123; 336 NW2d 14 (1983), *lv den* 418 Mich 867 (1983). Defendant misreads *Wheeler,* which held that a truck driver's back injury, incurred from a series of events spanning many years of driving, was not an "accidental bodily injury". The Court construed the no-fault act as applying to an injury resulting from an accident having an identifiable temporal and spa-

tial location. The 1980 accident in this case certainly meets that definition. The *Wheeler* Court did not use the terms "temporal" and "spatial" in the manner defendant now seeks to do.

We need not decide if there is a basis other than the cited language in *Wheeler* for concluding that plaintiff's right ankle injury did not have the requisite causal connection with the accident. Even taking into account the instability of her right ankle, we conclude that plaintiff has not suffered serious impairment of body function.

## C

"Serious impairment of body function" is a significant obstacle to a tort action for noneconomic loss in keeping with the alternative threshold requirements in MCL 500.3135; MSA 24.13135 of death or permanent serious disfigurement. *Cassidy, supra,* p 503. The Legislature intended to retain tort remedies for noneconomic loss for the catastrophically injured. See *Workman v Detroit Automobile Inter-Ins Exchange,* 404 Mich 477, 509; 274 NW2d 373 (1979). Thus, a plaintiff must show that the impaired body function is an important one and affects the person's general ability to live a normal life. *Cassidy, supra,* pp 504-505. Objective manifestation of the injury is also required because "[r]ecovery for pain and suffering is not predicated on serious pain and suffering, but on injuries that affect the functioning of the body". *Id.,* p 505. Permanency of the injury is a relevant factor, but is not required. *Id.,* pp 505-506.

With the above principles in mind, we now consider each of plaintiff's alleged injuries. With respect to her headaches, we note that plaintiff originally took Tylenol No. 3 medication, but switched to Extra Strength Tylenol when she became pregnant. Plaintiff claims that she gets head-

aches almost three times per week. Yet plaintiff
has never contended that the headaches have
impaired her body function. She has apparently
continued all her normal activities—school, work,
housekeeping, etc.—without interruption from the
headaches. Thus, we conclude that any impair-
ment was neither serious nor objectively mani-
fested.

We reach the same conclusion with respect to
plaintiff's back injury. Other than stiffness in her
back and neck the first few weeks after the acci-
dent, plaintiff has had no reported loss of motion
in her back. Her only continued complaint was
pain after being on her feet for four to five hours.
She did not claim that the injury prevented her
from performing any activities or functions. The
alleged existence of pain does not establish serious
impairment.

The injury to plaintiff's ankles presents us with
a much closer question. The swelling in the left
ankle objectively manifests injury, as does the
limited range of motion in the right ankle noted
by Dr. Salerno. Furthermore, to the extent that
the injury affected plaintiff's walking, it impaired
an important body function. Nevertheless, we con-
clude that the impairment was not serious. Doc-
tors Forman and Salerno did not find any swelling
when they examined plaintiff. Indeed, plaintiff
herself testified that the swelling occurred after
jogging, cycling, walking in certain ways, or being
on her feet for four or five hours. Thus, it is clear
that plaintiff was generally able to live a normal
life, but had to structure her activities more care-
fully to avoid aggravating the weakness in her
ankle. Accordingly, we conclude that plaintiff was
not seriously impaired within the intendment of
the no-fault act.

Plaintiff contends that the record is inadequate

for the Court to determine the extent of plaintiff's injury. If such is the case, the blame must be placed on plaintiff herself. Plaintiff has taken the position that she was not required to answer defendant's motion and affirmatively show serious impairment. We disagree. In the absence of a genuine issue of material fact, the trial court was obligated to make a determination as a matter of law. *Cassidy, supra.* If she could not show a genuine issue of material fact, plaintiff could protect herself only by submitting enough evidence to obtain a ruling on the merits in her favor. In this case, plaintiff took no steps to supplement the record beyond what the trial court had before it to rule on. Therefore, the court properly made a decision as a matter of law based on the undisputed facts.

Plaintiff further contends that summary judgment was erroneous because defendant never repudiated her allegation that she had suffered a serious impairment of body function. However, that allegation was not one of fact, but rather of law, and was a determination to be made by the lower court. We believe that the court made a correct determination that plaintiff had not suffered a serious impairment of body function.

Affirmed.

J. T. KALLMAN, J. *(dissenting).* I respectfully dissent from that portion of the majority opinion which holds that plaintiff was not seriously impaired within the meaning of MCL 500.3135; MSA 24.13135.

The question in the present case, whether plaintiff has suffered a serious impairment of body function, is no longer one to be determined by the jury. In *Cassidy v McGovern,* 415 Mich 483, 502; 330 NW2d 22 (1982), the Supreme Court held that

when there is no factual dispute as to the nature and extent of a plaintiff's injuries the question of serious impairment of body function shall be decided as a matter of law by the court. I cannot conclude, as a matter of law, that plaintiff has not suffered a serious impairment of body function within the meaning of MCL 500.3135; MSA 24.13135.

Plaintiff has been treated for the injuries to her ankles since August 1, 1980. She experiences pain and swelling in her left ankle after jogging, cycling or walking. These activities cause her ankles to twist. Sustained standing while doing household chores also causes her ankles to swell. Dr. Salerno has prescribed use of orthopedic shoes and utilization of an air cast during periods of prolonged weight bearing, walking or running. It is Dr. Salerno's opinion that plaintiff's ability to walk, run, or endure weight-bearing has been materially impaired. The majority states that plaintiff must structure her activities more carefully to avoid aggravating the weakness in her ankle. Yet, the majority concludes that plaintiff's impairment was not sufficiently serious to meet the threshold requirement. I do not believe that the Supreme Court, by allocating the determination of the seriousness of an injury to the courts, intended the courts to make value judgments such as the one made in the present case. Under *Cassidy,* the test is an objective one which looks to the effect of an injury on the person's general ability to live that person's normal life. *Cassidy, supra,* p 505. In the present case, plaintiff's injuries have affected her ability to live her normal life. Persons who do not have plaintiff's injuries are able to walk, run, and do household chores without swelling, pain and twisting ankles.

While I agree with the majority that the thresh-

old requirements of MCL 500.3135; MSA 24.13135 were intended to erect significant obstacles to tort actions for noneconomic loss, I do not believe that they were intended to bar recovery for injuries such as those sustained by plaintiff in the present case. The no-fault act does not define the phrase "serious impairment of body function". As the majority points out, walking is an important body function. *Cassidy,* p 505. Here, plaintiff's ability to walk, run, jog and stand have been impaired. These are all important body functions. The impairment of the body function must also be "serious". The word "serious" implies a great degree of impairment. However, it is clear that the injury may be sufficiently serious to meet the threshold requirement without being permanent. *Cassidy,* p 505. The Legislature intended that individuals with a serious impairment of a body function, whether it be for three hours or three years, be compensated for the impairment. In the present case, I conclude that plaintiff's injuries, for which she has been treated since 1980, are serious.

I find that plaintiff has an objectively manifested injury which reasonable persons could conclude has seriously impaired an important body function. Therefore, I would reverse the summary judgment and remand for trial.