**James R. THORESON, Plaintiff–Appellant**

v.

**Phillip KUNTZE, Defendant–Appellee,**

No. 00–1820.

United States Court of Appeals, Sixth Circuit.

Dec. 26, 2001.

Before NELSON and MOORE, Circuit Judges; and KATZ, District Judge.[*]

PER CURIAM.

Plaintiff James Thoreson appeals the United States magistrate judge's grant of summary judgment in favor of Defendant Phillip Kuntze on Thoreson's personal injury claims. The magistrate's decision was based on the State of Michigan's No–Fault Insurance Act, M.C.L. § § 500.3135, M.S.A. § 24.13135. For the following reasons, we AFFIRM the decision of the magistrate judge.

## I. Background

Plaintiff James Thoreson ("Thoreson"), a Wisconsin resident, was a passenger in a vehicle that was rear-ended by Defendant Phillip Kuntze ("Kuntze") on May 2, 1999, in Marquette, Michigan. Thoreson was transported by ambulance to a hospital, where X-rays and a neurological exam were negative. At the time, he complained of pain in his hip and tenderness of the neck and top of his head. The emergency room doctor diagnosed Thoreson with a cervical strain and left thigh contusion. Thoreson's gait was noted as stiff but he was able to walk "without any apparent difficulty." (J.A. at 72–73.) Thoreson was released with a soft cervical collar, a recommendation that he use an ice massage for 24–48 hours, and a prescription for an anti-inflammatory medication. Following his discharge, Thoreson remained in Marquette for three days, then returned to his home where he visited his chiropractor, Dr. William Smith, and complained of head, neck, upper back, ribs, chest and low back pain. Dr. Smith recommended treatment twice a day and issued a "no work" slip for a one month period.

[*] The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

On May 6, 1999, Thoreson saw Dr. Dennis Zahm, who had treated him for chest pain prior to the accident. Dr. Zahm noted that Thoreson reported having "a lot of myalagias and achiness since the accident." (J.A. at 98.) Dr. Zahm noted a bruise and hematoma on Thoreson's left thigh, an abrasion to the left scalp and left forehead as well as a sore neck or cervical spasm. In his progress notes. Dr. Zahm stated that Thoreson's hair transplant plugs (inserted one month before the accident) looked slightly inflamed but "reasonably good." Eventually, however, a large number of the hair plugs had to be replaced. Finally, Dr. Zahm noted a "very good chance of recovery." A follow-up exam with Dr. Zahn found that the abrasions on Thoreson's scalp had been resolved, but he still had a hematoma on his left thigh and a possible torn muscle. Dr. Zahm concluded that Thoreson was "doing extremely well and recovering nicely." (J.A. at 108.)

Thoreson continued receiving treatment from his chiropractor, Dr. Smith. In June, Dr. Zahm referred him to Dr. Scott Warren, an orthopedic specialist, who noted that Thoreson "had not had significant pain, or noted any specific weakness," but suspected that Thoreson suffered from a possible slight torn muscle of the posterior lateral aspect of the left thigh. At the end of July 1999, Dr. Warren concluded that the injury was healing nicely and that there were no "particular functional limitations in the future" relative to Thoreson's status. (J.A. at 123.)

Thoreson was also seen by a dentist for a fractured tooth, possibly as a result of the accident. The fractured tooth was removed and it is unclear what, if any, follow-up took place, though ceramic replacement was anticipated. At the time of the recommendation, Thoreson's long term prognosis was deemed to be "very good." (J.A. at 133.)

During his deposition, Thoreson testified that following a month of rest, he returned to work as the manager of a family restaurant, though he is now forced to leave work early as many as two days a week due to fatigue, something that he did not need to do prior to the accident. He also stated that he was not able to return to his seasonal endeavors of skiing and boating.

On July 26, 1999, Thoreson filed this personal injury suit against Kuntze. He claimed that his action was not barred by Michigan's No–Fault Automobile Statute, M.C.L. § § 500.3135, M.S.A. § 24.13135 ("the statute"), because his injuries resulted in both serious impairment and permanent disfigurement. The parties consented to the jurisdiction of the magistrate judge, who heard oral argument on Kuntze's motion for summary judgment.

On June 14, 2000, Magistrate Judge Timothy P. Greeley ruled in favor of Kuntze. The magistrate first found that there was no factual dispute regarding Thoreson's alleged injuries. Based on that determination, the Magistrate Judge found that Thoreson's allegation that he had suffered a serious impairment to an important bodily function was unsupported due to a lack of objective medical evidence. Alternatively, the loss of Thoreson's hair plugs, contrary to the opinion of his treating physician, was not deemed to constitute a serious permanent disfigurement under the statute.

## II.   Standard of Review

A magistrate judge's decision to grant summary judgment is reviewed *de novo,* using the same standard used by the district court. *See Owens Corning v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 257 F.3d 484, 490–91 (6th Cir.2001). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that par-

ty's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2541, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)). Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### III. Discussion

A. Thoreson's Potential Impairment or Disfigurement is a Question of Law.

The Michigan No–Fault Statute abolished tort liability effective as of 1973 for personal injuries arising out of automobile accidents, except for those incidents in which the plaintiff had suffered death, serious impairment of a bodily function, or a serious permanent disfigurement. In 1995, the Michigan legislature further amended the statute to convert the issue of determining whether a plaintiff satisfied an exception from an issue of fact to an issue of law:

(1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

. . .

(2)(a) The issues of whether an injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

(i) There is no factual dispute concerning the nature and extent of the person's injuries.

(ii) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement. . . .

MCL 500.3135; MSA 24.13135.

Neither party disputes that determination of Thoreson's impairment and disfigurement is a question of law. Both parties appear to agree that Thoreson suffered the injuries described in his medical reports and the affidavits attached to his motion for summary judgment. Their only real dispute lies in whether Thoreson's injuries were of such severity that they were able to meet the threshold of the statute that would allow suit against Kuntze.

B. Thoreson has not Suffered a Serious Impairment of a Bodily Function.

Thoreson claims that he suffered injuries, including strain to the muscles in his neck and trapezious, a bruise or hematoma on his left thigh, a cracked tooth, a scalp abrasion, and a bruise on his forehead. He maintains that these injuries have resulted in serious impairment of one or more of his bodily functions. Thoreson points out that he was away from work for a month, that he is forced to leave work

early two or three days each week due to accident-induced pain, and that during 1999 he was unable to engage in a number of recreational activities, such as boating or gardening, to the extent that he had enjoyed them prior to the accident. Finally, he argues that his cracked tooth may have altered the efficiency of his other teeth, and could have affected his ability to speak and chew.

As defined by the Michigan legislature, "serious impairment of bodily function" is "an objectively manifested impairment of an important bodily function that affects the person's general ability to lead his or her normal life." MCL 500.3135(7). This court is free to consider a number of factors when determining whether the impairment is serious. *See Miller v. Purcell*, 631 N.W.2d 760, 763, 264 Mich.App. 244, 248 (2001). These factors "include the extent of the injury, the treatment required, the duration of disability, the extent of residual impairment, and the prognosis for eventual recovery." *Id.* Furthermore, as Thoreson emphasized at oral argument, there is no requirement that an injury be permanent to be serious. *See Cassidy v. McGovern*, 330 N.W.2d 22, 30, 415 Mich. 483, 505–06 (Mich.1982).

■ Consideration of these factors militates against a finding that Thoreson suffered from a serious impairment that affected his ability to lead his normal life. With the exception of his chiropractor, Dr. Smith, the medical professionals who examined Thoreson opined that he was healing properly and had a good prognosis for recovery.[1] Although he has proposed a number of hypothetical ways that a

cracked tooth might affect a person's lifestyle, Thoreson has not shown that any of those possibilities have influenced his life. The evidence presented by both parties shows that the extent of Thoreson's injuries was minimal, and that his injuries required little treatment. Finally, the pain that allegedly forced Thoreson to leave work was not "objectively manifested." Thoreson has failed to demonstrate that he has suffered an "impairment of an important bodily function" within the meaning of the statute, and Kuntze is therefore not exposed to liability for having caused such an impairment.

## C. Thoreson has not Suffered a Permanent Serious Disfigurement.

Thoreson contends that the destruction of his hair implants is sufficient to constitute a "permanent serious disfigurement" under the statute. Thoreson argues that a finding that injuries that can be corrected by cosmetic surgery do not reach the disfigurement threshold would eliminate recovery for even the most severe scar, since no scar would be permanent when faced with sufficiently advanced cosmetic surgery.

■ Thoreson's argument is without merit. There is no reason to find that the Michigan legislature believed that the courts were not competent to distinguish between cosmetic surgery made necessary due to an accidental injury and that which was elected to alter a plaintiff's (presumably) natural appearance. The loss of Thoreson's hair implants does not constitute a "permanent serious disfigurement."[2]

---

1. Dr. Smith's affidavit concludes that "Mr. James Thoreson has suffered serious impairment to a body function a[sic] result of the May 2, 1999 accident, and that this impairment may be permanent." (J.A. at 225). Despite this conclusory affidavit, determination

of severity is clearly left to the court. See M.C.L. § 500.3135; MSA 24.13135

2. This contention would likely be met with surprise by a not inconsiderable portion of adult men. Indeed, the rolls of the seriously disfigured would include such social outcasts

### IV. Conclusion

Thoreson has failed to put forth sufficient evidence to demonstrate that his injuries entitled him to be excepted from the provisions of Michigan's No–Fault Statute that bar his personal injury action. Accordingly, summary judgment should be granted for the Defendant. The judgment of the magistrate judge is therefore AFFIRMED.

as Sean Connery, Kelsey Grammar, and Patrick Stewart.